HON. JOHN B. CLAYBERG,

HON. LEW. L. CALLAWAY,

HON. W. H. POORMAN.

## MONTANA RAILROAD COMPANY, APPELLANT, v. FREESER, RESPONDENT.

(No. 1,699.)

(Submitted October 21, 1903. Decided December 1, 1903.

*Eminent Domain—Condemnation Proceedings for a Railroad Right of Way—Damages for Improper Construction.*

Under Code of Civil Procedure, Sections 2221, 2222, damages accruing to ad-
jacent property from improper construction of railroad are not allowable in
condemnation proceedings for a railroad right of way.

*Appeal from District Court, Meagher County; Wm. L. Holloway, Judge.*

CONDEMNATION proceedings by the Montana Railroad Company against John H. Freeser. From a judgment awarding increased damages to defendant over the commissioners' award, and from an order overruling a motion for a new trial, plaintiff appeals. Reversed.

*Mr. M. S. Gunn,* for Appellant.

*Mr. Lewis Penwell,* and *Messrs. Word & Word,* for Respondent.

Where in a condemnation proceeding there is evidence to sustain the verdict, and the testimony is conflicting, the appellate court will not interfere. (*Helena & L. S. & R. Co.* v. *Lynch,* 65 Pac. 919; *Montana Ry. Co.* v. *Warren,* 6 Mont. 275, 284; *Springfield & Memphis Ry. Co.* v. *Rhea,* 44 Ark. 258; *Railway Co.* v. *Woodruff,* 49 Ark. 381; *Ill. & Wis. Ry. Co.* v. *VanHorn,* 18 Ill. 258; *Kyle* v. *Miller,* 108 Ind. 90; *Colville* v. *St. Paul & C. Ry. Co.,* 19 Minn. 283; *Sedalia* v. *Ry. Co.,* 23 Neb. 613; *In re Gilroy,* 78 Hun. 260; *Shoemaker* v. *U. S.,* 147 U. S. 282; Lewis on Eminent Domain, 2d Ed., Sec. 524; *Ill. R. R. Co.* v. *McClintock,* 63 Ill. 514; *Somerville R. R. Co.* v. *Doughty,* 22 N. J. Law, 495; *Matter of N. Y. R. R. Co.,* 21 Hun. 250.)

MR. COMMISSIONER POORMAN prepared the opinion for the court.

This action was instituted in the district court of Meagher county for the purpose of having a strip of land situated in said county, and belonging to defendant, condemned for use as a right of way for a railroad. The complaint was filed February 1, 1900, and a summons was issued on that day. Subsequently a hearing was had, an order of condemnation made, and commissioners appointed, who subsequently made and filed their

report, awarding damages to defendant. The defendant appealed from this award. A trial by jury was had on June 15, 1900, resulting in a verdict for defendant for a greater amount than that awarded by the commissioners. Judgment was entered against the plaintiff. Plaintiff then moved for a new trial, which was overruled. From this judgment, and from the order overruling the motion for a new trial, plaintiff appeals.

It appears from the evidence that the tract of land through which this right of way passes consists of 1,080 acres, 1,000 acres of which are on the south side of the Musselshell river, and 80 acres on the north side; that the portion along the river on the south side is a long, narrow strip of meadow land, containing about 350 acres; that on the high land south of this meadow land the defendant has constructed an irrigating ditch; that the right of way sought to be condemned is about half way between the river and this irrigating ditch. It appears further that prior to the trial of this case the railroad had been partially constructed.

The evidence introduced by the defendant was almost wholly opinion evidence, even as to those matters which by measurement and survey might have been made definite and certain. The defendant, testifying in his own behalf, says with reference to the drainage of his land: "In the construction of the railroad through there, there are cuts and fills. I think there are three cuts and four or five fills. The material used in making the fills came off what they claim as their right of way on each side. Before the railroad was put through there I could irrigate the whole ranch from the main ditch—just turn it out of the main ditch and let it run down to the river, where now it flows to the grade and forms a pond there, and I can't irrigate good below the track." The defendant then gave it as his opinion that the amount of hay that he would be able to cut from this meadow would be considerably less by reason of the road being there. Defendant was then asked: "How far is the water backed up there by the grade?" The plaintiff objected "to any proof that any water is backed up by the grade,

upon the ground that the question of the amount of damages depends upon the conditions existing at the time of service of the summons in this case, and, if there is any damage resulting from the construction of the road, it cannot be considered in this case, but is a matter for a subsequent action." This objection was overruled, and the witness then testified: "It is backed up in three or four places there. I have got to be very particular how I turn my water loose, otherwise it is liable to flood the grade. There are places there that are four feet under water. It is ten feet where these holes are. It is backed up for 100 or 150 feet—up towards the ditch." Subsequently, on cross-examination, the defendant says: "I have eight laterals extending under the track. There is no reason why all the laterals I had before can't be extended under the track and carried on to the north side. The railroad company were to do that, but they haven't constructed them at all. I was allowed damages for the construction of sixteen boxes under the track by the commissioners. There are eighteen culverts and ditches in that mile and a half, and I have eight. That eighteen would cover my entire irrigating system, and take them all under the track."

The statute relating to condemnation proceedings necessary to be considered in passing upon this alleged error are Sections 2221, 2222, Code of Civil Procedure. Subdivision 1 of Section 2221 provides that the value of the property sought to be appropriated and all improvements thereon pertaining to the realty must be assessed as damages. Subdivision 2 of this section reads: "If the property sought to be appropriated constitutes only a part of a larger parcel, the damages which will accrue to the portion not sought to be condemned by reason of its severance from the portion sought to be condemned, and the construction of the improvements in the manner proposed by the plaintiff." Section 2222 reads in part: "For the purpose of assessing compensation and damages, the right thereto shall be deemed to have accrued at the date of the summons, and its actual value at that date shall be the measure of compensation

of all property to be actually taken, and the basis of damages to property not actually taken but injuriously affected."

This statute is definite and certain as to the time when compensation and damages accrue, and it is also certain in its terms as to the right of the owner to recover damages which will accrue to that portion of the larger tract not sought to be condemned, by reason of the severance. But aside from the value of the land actually taken, the statute does not enumerate just what elements may be taken into account in fixing damages to the remaining portion of the tract, nor what the rule shall be governing the admissibility of evidence. The owner is entitled in all cases to have as one item of damages the actual value of the part taken, and where the contemplated improvements, properly constructed, cared for, and operated, injure the remaining portion of the tract, he is entitled to recover for that, unless the benefits derived equal or exceed the injury. When damages are appraised prior to the construction of the improvements for which the land is condemned, the estimate should be made on the assumption that the improvements will be properly constructed; and, if they are constructed pending the condemnation proceedings, the rule under this statute should be the same. The actual effect of the properly constructed improvements in the manner proposed by plaintiff as to the larger parcel should control the appraisal. If the improvements are improperly or negligently constructed, no additional damages should be given for this reason.

The rule laid down in *Neilson et al.* v. *Chicago, etc. Railway Co.,* 58 Wis. 516, 17 N. W. 310, is so reasonable in its terms, and so plainly stated, that we quote from that decision: "The rule in *Snyder* v. *W. U. R. R. Co.,* 25 Wis. 60, is that the measure of damages is the actual depreciation in value as established in evidence, exclusive of all remote, fanciful or speculative injuries; but that, in order to account for and support their opinion of depreciated value, the witnesses who prove it may be permitted to state all causes of injury which they believe go to make up the depreciation to which they testify. But these do not go as evidence to the jury to assess damages upon, but only

as means by which the jury can estimate the value of the evidence of depreciated value. This is not a distinction without difference; it is a practical and important one. The witnesses who are permitted to state the grounds of their judgment are subject to cross-examination, and their judgment to criticism; there is some safety in permitting them to speculate on the causes of depreciation. But to admit evidence of remote and conjectural sources of injury for the jury to consider and assess damages upon, without restraint or scrutiny, would be going outside of all safe rule, and plunging into the the abyss of wild and suppositious damages." The following cases are cited as bearing upon this question: *Freemont, E. & M. V. R. R. Co.* v. *Whalen,* 11 Neb. 585, 10 N. W. 491; *Oregon & Cal. R. R. Co.* v. *Barlow,* 3 Ore. 311; *Currie* v. *Waverly & N. Y. B. R. R. Co.,* 52 N. J. Law, 381, 20 Atl. 56, 19 Am. St. Rep. 452; *Winona, etc. R. R. Co.* v. *Waldron,* 11 Minn. 515, 88 Am. Dec. 100; *Bloodgood* v. *Mohawk & H. R. R. Co.,* 18 Wend. 9, 31 Am. Dec. 313.

The application of this rule to the facts in the case from which the quotation is made may have been too strict. The quotation is given only as a general rule, without regard to the manner in which it was applied in that case.

The evidence of defendant leading up to the question objected to shows that prior to the construction of the railroad the surface drainage of defendant's land lying south of the railroad ran to the north, across the right of way, and into the river beyond; that the contour of the country formed a natural drainage, and required no act on the part of defendant; that this water so drained was not surface water resulting from rainfall or melting snow, but was the overflow from the irrigation of defendant's land south of the right of way. The amount of water which would accumulate and pond back on defendant's land would therefore be dependent on the act of defendant himself. If the defendant has the right to permit this water to drain down to this right of way in the manner testified to, then it is the obvious duty of the plaintiff to provide means for its

escape; and if plaintiff does not provide such means, and damage results to the defendant, the law gives him a remedy.   If this land were so situated that the proper construction of the road would prevent any drainage, a different question might arise, but, from the testimony of defendant, no such condition exists in this case.   If damages can be properly assessed against plaintiff for the prospective flooding of defendant's land under such circumstances, one of two conditions is apparent:   The condemnation proceedings would be *res adjudicata* as to any action brought by defendant for damages resulting from any subsequent flooding of his land, or else, if the defendant could maintain such subsequent action, the plaintiff would be twice mulcted in damages—once before the damage had been done, and once afterwards.   This flooding may occur once in each year, or perhaps oftener.   It may damage only the 100 or 150 feet of land testified to by the plaintiff, or it may damage many times that amount.   It is therefore apparent that the condemnation proceedings cannot be *res adjudicata* as to such subsequent damages, but that defendant may maintain a subsequent action therefor.   The plaintiff cannot, under these proceedings, acquire a right to any part of defendant's land, except that which is condemned herein for a right of way for its railroad.

The defendant is undoubtedly entitled to compensation for any damage which may result to him by reason of having to change his irrigating ditches, or the construction of new ditches; and, if the proper construction of the road prevents him from irrigating a part of his land, this is also a proper item of damages.

The evidence called for by this question, and which was actually given in response to the question, submitted to the jury as a distinct item the damages which might result to defendant in case the road was improperly constructed, and in case, further, that the defendant permitted a sufficient amount of water to escape to form a pond or lake that would flow back upon his land.

The admission of this evidence was error, for which the judgment and order appealed from should be reversed.

The appellant further contended that the evidence is insufficient to sustain the verdict. The relations existing between the value of this ranch, regarded as a whole, and the values of the various parts thereof, as appears from the evidence on the part of the defendant, are not such as to convey any definite idea to the jury as to the result which should be reached. The defendant first testifies that the ranch as a whole is worth $8,000. Again he says that the meadow land, consisting of 350 acres, is worth $50 per acre, making a value of $17,500 for that land alone. Again he states that 1,000 acres of the land (nearly the entire tract) is worth $25 per acre, making a total value therefor of $25,000. Again he states positively, on cross-examination, that this meadow land is worth $40 per acre, making the total value of such land $14,000. Again he says: "I put a price of $50 an acre on that strip that you took out of my ranch for the road. I wanted to make it $150 just for the strip of 20 acres. I will amend my answer and make it $150 for that strip. The bottom land—hay land—before the road went through, was worth $40 an acre. The land that is included in this right of way was not any more valuable before the road went through than the balance of the tract of meadow land." If this strip of land taken for the right of way was worth $150 per acre, and was no more valuable than the rest of the meadow land, the direct inference would be that the entire tract of meadow land was worth $150 per acre, which would be giving it a value of $52,500. The defendant possibly meant that the $150 per acre for the land taken would compensate him not only for the land actually taken, but for all damages resulting from the severance; but such is not the statement in his testimony. All the witnesses on the part of the defendant, with possibly one or two exceptions, in testifying concerning the value of this land, either on direct or cross-examination, testified that a part of this ranch was worth several thousand dollars more than the whole ranch. Some statements were also made that the system of irrigation would have to be changed; that a part of the land could not be irrigated, by reason of the railroad being there; that no ditch could be constructed along

the north side of the right of way, parallel with the same. But it appears that there had been no survey, no measurements made, no levels taken, and that the evidence was the mere opinion of the witnesses, derived from their general observation. There is absolutely no evidence as to the amount of land which could not be irrigated by reason of the construction of this railroad. The statement is only general that a part of the land cannot be irrigated. Whether this is one acre or 100 acres, there is no evidence. One of the witnesses testified that when he passed over the land there were about 100 acres that were not at that time irrigated, but as to whether it could be irrigated the evidence is silent. This testimony, it must be remembered, was given by persons who qualified as experts, and it must be construed by the rules governing evidence of the class to which it belongs.

Without passing on the question as to the sufficiency of the evidence to sustain the verdict, we have deemed it proper to direct attention to the character of the testimony given, so that the court may be properly guided at another trial.

For the first reason herein given, we recommend that the judgment and order appealed from be reversed.

PER CURIAM.—For the reasons given in the foregoing opinion, the judgment and order are reversed, and the cause remanded for a new trial.

MR. JUSTICE HOLLOWAY, being disqualified, takes no part in this decision.