ELDORADO, MARION AND SOUTHWESTERN RAILROAD CO.

*v.*

J. F. EVERETT.

*Opinion filed February 21, 1907.*

1. EMINENT DOMAIN—*what questions proper to test extent of witnesses' knowledge.* Witnesses who have testified that remainder of a tract of farm land would be greatly depreciated in value by the construction of a railroad upon the part actually taken for right of way, may properly be asked whether they knew of any farm which was depreciated in value by reason of a railroad going across it, or any farm that sold, or would sell, for less on that account.

2. SAME—*what should not be considered in determining question of damages.* In determining the question of damages to land not actually taken for railroad right of way, it is not proper to take into account damages which do not affect the market value of the property nor damages nor injuries for which the petitioner would be liable in another action.

3. SAME—*when evidence of recent voluntary sales is proper in rebuttal.* If the defendant in a condemnation proceeding offers evidence in support of his cross-petition for damages to lands not taken, including underlying coal, after the petitioner has offered proof of the value of the strip of land taken for its right of way with the coal rights reserved to the defendant, in accordance with its stipulation, it is proper for the petitioner, in rebuttal, to make proof of prices realized at recent voluntary sales of lands in the vicinity similarly situated, including the underlying coal or the coal as separated from the surface.

4. SAME—*evidence as to what petitioner paid for right of way over other land is not competent.* In a proceeding to condemn a strip of farm land for railroad right of way, evidence as to what the petitioner paid for a right of way over other land one-half mile from the tract condemned is incompetent.

5. SAME—*remaining land is not damaged if its value after the taking is as great as before.* The remainder of a tract of land is not damaged by the taking of the strip necessary for railroad right of way if its fair cash market value after the taking is as great as it was before, or greater.

6. SAME—*when instructions as to incidental damages are unwarranted.* Instructions in condemnation authorizing the jury, in determining the question of damages to land not taken, to consider the fact of part of the land being cut off from the improvements and

incidental injuries resulting from perpetual use of the track for moving trains, are unwarranted, where there are no improvements or buildings on the land and no one living on the premises to be inconvenienced from the operation of trains.

7. Same—*benefit which land owner secures as an owner is special benefit.* A benefit which a land owner secures as an owner of property from the construction and operation of a railroad through his land is a special benefit, and the considering of benefits which enhance the value of the particular property is not setting off benefits against damages but is simply ascertaining whether there are any damages, since damages cannot exist if the value of the property is not lessened.

8. Same—*rule as to considering benefits—general and special.* General benefits affecting the whole community, whether owners of property along the line of railroad or not, such as increased facilities for travel, increase of population and the enhancing of general prosperity, cannot be considered upon the question of damages to land not taken; but benefits flowing from the proposed improvement which enhance the market value of the particular land are special benefits and should be considered, even though other property along the line of railroad is similarly benefited.

Appeal from the County Court of Williamson county; the Hon. W. F. Slater, Judge, presiding.

Colp & Ferrell, for appellant.

Denison & Spiller, for appellee.

Mr. Justice Cartwright delivered the opinion of the court:

Appellant filed its petition in this case in the county court of Williamson county to cause to be assessed the compensation to be paid to appellee for the right of way over and upon a strip of land one hundred feet wide, described in the petition, containing 4.46 acres, extending across a tract of land containing 46 acres. The defendant filed a cross-petition claiming damages to the remainder of the tract in the use and cultivation of the same, and also upon the ground that the land was underlaid with a valuable bed of coal, and that the petitioner would take the coal underlying the right of

way and prevent defendant from mining the same. The petitioner then filed a stipulation that the judgment entered should affect the surface only; that defendant should retain the full right and title to the coal and other minerals underlying the right of way, with full power and authority to mine and remove the same without let or hindrance, in the usual and customary manner of mining coal, without regard to the railroad to be constructed by petitioner; that the defendant should not, under any circumstances, be liable to petitioner for any damages that might result by reason of the mining and removal of the coal underlying the right of way, and that petitioner should build a crossing and fence the right of way within thirty days after its railroad should be in operation. The case was tried with a jury, and by their verdict they gave the defendant $180 for the land taken and $630 for damages to land not taken. The court overruled petitioner's motion for a new trial and rendered judgment on the verdict, from which petitioner appealed.

The petitioner introduced evidence as to the value of the strip to be taken, considering only the surface and the defendant retaining the coal and mining rights thereunder, and the defendant offered evidence on the same subject. There was very little difference in the opinions of the witnesses as to the value of the strip under those conditions, and their estimates ranged from $30 to $40 an acre. The controversy was over the issue raised by the cross-petition whether the remainder of the tract would be damaged. The land was underlaid with a valuable bed of coal about six feet thick, at a depth of one hundred and eighty feet. The defendant resided some distance from the land and did not occupy it, and it was farmed by a tenant. The defendant produced witnesses who limited their testimony to the effect the railroad would have upon the surface as a farm in its use and cultivation, and testified that the property would be damaged to a considerable extent. The petitioner contended that the remainder of the land would be benefited and would be worth

more in the market by reason of railroad facilities. There was no railroad near enough to afford facilities for mining or transporting the coal, and the evidence for the petitioner tended to prove that the coal underlying the land was of trifling value without such facilities in immediate connection with it, and that the construction of the road would enhance the value of the portion of the tract not taken for right of way. Three witnesses testifying for the defendant and giving opinions that the remainder of the tract would be greatly depreciated in value by the construction of the road, were each asked the question whether they knew of any farm which was depreciated in value by reason of a railroad going across it like this one, or any farm that sold or would sell for less on that account. The court sustained objections to the questions, and therein erred. (*Chicago, Bloomington and Decatur Railway Co.* v. *Kelly,* 221 Ill. 498.) It was proper that the jury should know the extent of the knowledge possessed by the witness upon the subject concerning which he gave his opinion and the basis of such opinion, that they might judge of its value. Another witness for the defendant was asked what the effect of a steam railway running through the farm would have with respect to the liability or probability that the crop would be set fire to. The court overruled petitioner's objection to the question, and witness answered that there would be such danger. Petitioner then asked the witness if he knew that the railroad company would be liable for the destruction of the crop if it set fire to it and if he took that fact into account in his estimate, and the court sustained an objection to those questions. The court erred in the ruling, both for the reason that the question was not limited to the effect on the market value of the farm arising from danger of fire and because it included damages for which the petitioner would be legally liable in another action. It is not proper to take into account damages which do not affect the market value of the property, nor damages or injuries for which the petitioner would be liable in an-

other action. (*Jones* v. *Chicago and Iowa Railroad Co.* 68 Ill. 380.) There were no buildings on the land and no improvement whatever except a well, which would not be damaged by a fire.

The defendant having introduced evidence in support of the cross-petition, the petitioner, in connection with other evidence offered in rebuttal, proved that various tracts of land in the vicinity were situated substantially the same as this tract and were similar in character, and then asked a witness whether he knew that certain of those tracts had been sold within the last year and whether the sales were voluntary. The question was objected to as not proper in rebuttal, and the court sustained the objection. The petitioner then offered to prove by witnesses present in court that voluntary sales of said tracts had recently been made, including the underlying coal, or of the coal as separated from the surface, and the amount of such sales. The court refused to receive the evidence on the ground that it was not proper rebuttal. The evidence was competent and material, (*Peoria Gas Light Co.* v. *Peoria Terminal Railway Co.* 146 Ill. 372,) and the court erred in sustaining the objection. The petitioner, in the first instance, was only called upon to prove, and only did prove, the value of the one hundred foot strip with the coal and mining rights reserved to the defendant. The defendant then offered proof in support of the cross-petition, and the petitioner then had the right to show what the coal underlying the land, or the remainder of the tract including the coal, was worth in the market when the petition was filed. So far as anything relating to damages to the remainder of the tract was brought into the case in the first instance, it was done by cross-examination, and petitioner was not precluded from meeting the evidence in support of the cross-petition.

A witness for the defendant was permitted, against the objection of petitioner, to state what petitioner had paid for a right of way across another tract of land one-half mile east

of this tract. The petitioner afterward moved the court to exclude the evidence, and the court did so. The evidence was incompetent. (*Schuster* v. *Sanitary District of Chicago,* 177 Ill. 626.) The fact was brought before the jury and had accomplished its purpose, so that it is doubtful whether the subsequent exclusion of the evidence cured the error. Whether that error would be ground for reversal it is not necessary to decide.

Complaint is made that the court refused to give three instructions asked by the petitioner, which stated, in somewhat varying language, that if the fair cash market value of the land not taken would be as great after the taking as before, or greater, such land would not be damaged. The principle stated was correct, but the court was right in refusing the instructions for the reason that the same principle was stated to the jury repeatedly in other instructions. More instructions were given at the request of each party than were required. There was practically no dispute as to the value of the strip of land actually taken, and as to the remainder the question to be determined was whether or not it would be worth less in the market with the railroad than without it. A few simple instructions would have covered that subject, but the instructions for the defendant included almost everything that could be thought of that could affect any tract of land, whether applicable to this land or not. We would not feel justified in taking up the numerous instructions separately and pointing out their defects. The jury were instructed to consider the fact of a part of the land being cut off from the improvements when there were none, and to consider incidental injuries resulting from the perpetual use of the track for moving trains. There were no buildings on the land which would be subject to jar or other injury by moving trains, and no one lived on the premises who might be subject to inconvenience from smoke, noise or any other incidents of the operation of trains, so that there was nothing to justify an assumption that there would be

any incidental injury affecting the market value from the cause stated. The jury were told, in different instructions, that no benefits or advantages accruing to the lands or property in common with all other property along the line of the railroad by reason of the construction and operation of the railroad could be taken into account, and that special benefits are such benefits flowing from the proposed construction and operation of the railroad as do not apply to other lands, generally, in the neighborhood. The real question submitted to the jury, as repeatedly stated in the decisions of this court, was the value of the land not taken, at the time of filing the petition, with and without the improvement, and the fact that other property in the vicinity is increased in value by the construction and operation of the road furnishes no excuse for excluding special benefits to the particular property in determining whether it has been damaged or not. (*Metropolitan West Side Elevated Railway Co.* v. *Stickney,* 150 Ill. 362.) The lands, generally, along the line in this vicinity were coal lands, and might all be benefited by reason of improved facilities for mining and transporting coal. Considering benefits which enhance the value of the particular property is not setting off benefits against damages, but is simply ascertaining whether there are damages or not. If the property is of the same value after as before the improvement the owner has sustained no loss. Damages can not exist if the value of the property is not lessened, and the benefit which the land owner secures as an owner of the property is a special benefit. In determining whether land has or has not been damaged the jury should consider whether the market value of the property remaining will be enhanced by the improvement, although other property in the vicinity will be likewise benefited. (*Metropolitan West Side Elevated Railway Co.* v. *White,* 166 Ill. 375.) It is true that general benefits affecting the whole community, whether owners of property along the line of a railroad or not, such as increased facilities for travel, the increase of

population and enhancing the general prosperity, are not to be taken into account; but benefits flowing from the proposed improvement which appreciably enhance the market value of the particular tract of land and offset injuries to it are to be considered, for the purpose of determining the ultimate question whether there are damages to the lands not taken. The instructions were erroneous in the particulars which have been pointed out.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*