Argued at Pendleton May 3, affirmed June 1, 1926.

# LA GRANDE *v.* MARY RUMELHART ET AL.

### (246 Pac. 707.)

**Evidence—In Condemnation Proceedings, Resident Owners in Local-
ity of Tract Involved, Who Knew of Recent Voluntary Sale of
Tract of Same Quality in Same Community, Held Competent to
Testify as to Value.**

1. In action to condemn right of way for highway, owners of
land in locality of land involved, who had lived in locality several
years and knew of tract of land of same quality in same community
which had been recently voluntarily sold, were competent to testify
as to value.

**Eminent Domain—Value of Land is Determined by Price for Which
It is Bought and Sold in Voluntary Transactions.**

2. Market value of land sought to be condemned is determined
by price for which it is bought and sold in ordinary voluntary trans-
actions.

**Appeal and Error—Appellate Courts will not Disturb Decision of
Trial Judge as to Qualification of Expert Unless There is No
Evidence to Sustain It.**

3. Where witness is tendered as an expert, it is duty of trial
judge to determine whether or not witness is qualified, and appellate
courts will not disturb his decision unless there is no evidence to
sustain it.

**Appeal and Error—Questions in Condemnation Action Calling for
Conclusion Held not Prejudicial to Plaintiff, Damages Being an
Estimate, and Jury Could not have Been Influenced by Testi-
mony.**

4. Questions in their entirety, in action to condemn right of way
for highway, as to what damage or injury would be done to
place as a home, *held* not prejudicial to plaintiff, though in part ob-
jectionable because calling for conclusion, since damages in such
cases is largely an estimate, and jury could not have been influenced
particularly by testimony.

**Eminent Domain—Evidence of Expense of Construction of Drain to
Protect Premises from Water Draining from Highway Held
Admissible in Condemnation Proceedings Without Being Pleaded.**

5. Where, as a result of construction of highway, water drained
therefrom on to defendants' premises and necessitated drain to
protect their barnyard and garden, evidence of expense of construc-

1. Evidence of price paid for other property by party seeking to
condemn property for public use, see note in 43 **L. R. A. (N. S.)** 985.
See, also, 10 **R. C. L.** 220.

2. See 10 **R. C. L.** 128.

3. See 11 **R. C. L.** 574.

tion of such drain was admissible as element of damages, in action to condemn right of way, without being pleaded.

**Eminent Domain — In Condemnation Action Tried Before Actual Appropriation, Only Value of Land Taken and Injury to Remaining Parts of Tract can be Considered.**

6. Where action to condemn is tried before actual appropriation, defendants can recover nothing but the value of the land taken and diminished value of the parts of the tract remaining, since other elements of damage would be speculative.

**Eminent Domain—Where Improvement is Completed Before Action to Determine Damages is Brought, All Damages Directly Flowing from Appropriation and Construction Should be Assessed.**

7. Where public highway has been completed before condemnation action has been brought to determine damages, all elements of damage resulting directly and incidentally from construction of highway and appropriation should be assessed against condemnor.

**Eminent Domain—Measure of Damages to Parts of Tract not Appropriated for Highway is the Depreciation of Market Value of Those Parts.**

8. Where tract of land is severed by highway, damages to parts not taken is determined by deducting reasonable market value of those portions after the severance and construction of highway from reasonable market value thereof when complaint in action to condemn was filed.

---

Eminent Domain, 20 **C. J.**, p. 734, n. 56, p. 778, n. 16, p. 779, n. 20, 21, 25, p. 787, n. 63, p. 959, n. 27, p. 1018, n. 76, p. 1019, n. 85, p. 1020, n. 94, p. 1115, n. 92, 97, p. 1120, n. 23, 24.
Evidence, 22 **C. J.**, p. 526, n. 11, p. 580, n. 87, 89, p. 695, n. 48.
Market, 38 **C. J.**, p. 1264, n. 70.

From Union: GEORGE TAZWELL, Judge.

In Banc.

This is an appeal by the plaintiff from the judgment in favor of the defendants for $2,000 and $250 as attorney fees. The plaintiff instituted this action to condemn a right of way for a public highway through the property belonging to the defendants. The right of way is a part of the highway locally known as "The Oregon Trail." The property was appropriated and a road constructed before this action was instituted. The plaintiff assigns thirteen errors based upon the order of the court denying plaintiff's motion to strike parts of the answer, ad-

mitting certain testimony over its objection and the giving of certain instructions. The bill of exceptions and the brief for the plaintiff clearly classifies and defines the alleged errors which will be noticed in the opinion.                              AFFIRMED.

For appellant there was a brief and oral argument by *Mr. George T. Cochran.*

For respondents there was a brief and oral arguments by *Mr. F. S. Ivanhoe* and *Mr. Robert S. Eakin.*

COSHOW, J.—1-3. Were witnesses Pierce and Liley qualified to testify to the value of land? Both of these witnesses testified that they had lived in the same locality in which the land involved is located for a number of years; both were owners of real property in that locality, and both knew of a tract of land of the same general quality in the same community as the land appropriated and which had been recently sold by voluntary sale. Under the general authorities and the authorities in this state they were competent to testify: Lewis' Eminent Domain (2 ed.), § 443; 10 R. C. L. 220, 221, § 188; *Portland v. Investment Co.,* 64 Or. 410 (129 Pac. 756); *Chicago & Western Indiana Ry. Co.* v. *Heidenreich et al.,* 254 Ill. 231 (98 N. E. 567, 28 Ann. Cas. 266, and note beginning in page 271); note to *Hubbell* v. *City of Des Moines et al.,* Ann. Cas. 1916E, beginning in page 598. The market value of any commodity as well as land is determined by the price for which the same is bought and sold in ordinary voluntary transactions. It would seem, therefore, especially in a locality where few sales are made, that it would be competent to have a witness who knows of a voluntary sale

having been made at or about the time that the land was appropriated testify of the market value of that land. Value is always a matter of comparison or estimation. It always depends more or less on the judgment of the parties to a transaction involving it. Again it is the duty of the trial judge as a preliminary question of fact to determine whether or not a witness is qualified as an expert, and the appellate courts will not disturb the decision of the trial judge, unless there is no evidence to sustain the preliminary decision of that court: *Rugenstein* v. *Ottenheimer,* 70 Or. 600, 603 (140 Pac. 747); *Portland & O. C. Ry. Co.* v. *Sanders,* 86 Or. 62, 72 (167 Pac. 564); *Portland-Oregon City Ry. Co.* v. *Penney,* 81 Or. 81, 90 (158 Pac. 404); 13 Ency. of Evidence, 486, 489.

4. Were the questions so framed that witnesses Pierce and Liley testified to conclusions concerning damages and interfered with the province of the jury? We believe not to the prejudice of the plaintiff. These witnesses were asked:

"Q. State what, if any, damages or injury a highway located where that is there, cutting the place in two, as it does, well, what damage or injury results, if any, to the use of the balance of the premises, as the home of two persons, like you know the defendants to be here.

"A. Well, that is a pretty hard question to answer, if it was mine I would consider that I had no home after it went through there.

"Q. State whether or not you mean by that that for the purpose of a home for people like these defendants, its value would be destroyed.

"A. Yes, that is my answer; it would be destroyed as a home."

The ultimate question the jury was called upon to answer was the amount of damages sustained by

the defendants by the appropriation of the land and the construction of the road. Taking the questions in their entirety, we do not believe that they call for an estimate of the damages by the witnesses, but rather the nature of the injury sustained by the taking of the land and the construction of the highway. The jury was permitted to view the premises, and we do not believe the ruling of the court was prejudicial error. The questions are not free from objections because they call for a conclusion, at least in part. In cases of this kind, however, the matter of damages is largely an estimate, and we do not believe that the jury could have been influenced particularly by the testimony. Most of the witnesses were very familiar with the tract of land and were in a situation to estimate the effect upon that particular tract of land by the appropriation of the strip of land through it and the separation of the remaining parts from each other. These witnesses and another witness also described the manner in which the road was constructed and the difficulty of passing from one part of the tract owned by the defendants to the other part. It was for the purpose of drawing out this condition that the question was propounded and not to secure from the witnesses an estimate of the damages in money. In other words, the interrogator sought to have the witnesses tell the nature of the damages or injury done the tract of land and not the amount of that damage. The answers of the witnesses indicates that to have been their understanding. They do not attempt to state the amount of the damages but rather the nature, in that it separates and spoils the tract for a home.

5. "Is the expense of building a concrete sluiceway special damages that must be plead in order to admit evidence thereof?" We answer no. The evidence is to the effect that in the construction of the roadway, the water is drained from it on to the premises of the defendants, flooding the barnyard and garden; that it would be necessary to construct a drain for the purpose of protecting the barnyard and garden from the overflow. The evidence indicates that this surplus water is the direct result of the construction of the road. A culvert is placed in the road to drain the upper part of the same for some little distance in both directions, and the outflow of that culvert is just above a part of defendant's premises. This is one element of the damages resulting to the part of the tract not taken for the roadway from the appropriation. There are many such elements.

"It would be difficult to enumerate the various elements of damages proper to be considered when part of a tract is taken. The shape and size of the parcel or parcels which remain, the difficulty of access and of communication between the parts, inconvenience and disfigurement caused by the taking, any interference with the drainage of the land or with the flow of surface water, or with the water supply, are recognized by all authorities as proper items to be taken into account in assessing the damages." 2 Lewis' Eminent Domain (2 ed.), § 496.

The necessary expense to be incurred in properly draining that part of the tract overflowed by the drainage of the highway is a proper item of damage to be considered.

Other questions presented involve the extent of damages recoverable in this action. The defendants allege in their answer certain facts constituting spe-

cial damages to the parts of the tract of land not taken by the plaintiff but separated by the highway. Among these causes for special damages are the destruction of fences, the expense of fencing the tract along the highway, the destruction of some fruit trees, a stone cellar used for cold-storage purposes in the summer and protection from the extreme cold in the winter; the deposit of large stones upon the garden and in the door yard, the shoveling of snow from the highway upon the premises of the defendants below the same, the inconvenience caused the defendants by travel on the highway from dust, fumes from gasoline and oil, and the annoyance from the lights of the automobiles flashing into the interior of the dwelling. It is the contention of the plaintiff that the defendants can recover in this action only the actual value of the land taken and the diminished value of the parts of the tract remaining. On the other hand, the defendants claim that inasmuch as the highway has been constructed they are entitled to recover in this action not only the actual value of the land taken, plus the difference in the market value of the parts of the tract remaining after the construction of the highway, but also such incidental damage as resulted to the defendants from the construction of the highway. There is conflict in the authorities. The rule is thus stated in 20 C. J. 778, Section 233:

"In proceedings to condemn land or to recover compensation for land already taken or injured, no damages are included except such as necessarily arise from a lawful taking and a proper construction and operation of the improvement. * * So in such a proceeding there can be no recovery for an original wrongful entry nor for trespasses committed in con-

structing the improvement. * * Nevertheless it has. been held in some jurisdictions that, where the work incident to a public improvement has been performed prior to the commencement of condemnation proceedings, damages arising from negligence in doing the work may be recovered in such proceedings.''

The following cases support the contention of the plaintiff: *Springfield & Memphis Ry. Co.* v. *Henry,* 44 Ark. 360; *Dowd* v. *Mason City Ry. Co.,* 76 Iowa, 438 (41 N. W. 65); *Davis* v. *New England Ry. Co.,* 199 Mass. 292 (85 N. E. 475, 20 L. R. A. (N. S.) 1061); *Eldorado, M. & S. W. Ry. Co.* v. *Everett,* 225 Ill. 529 (80 N. E. 281); *Montana R. Co.* v. *Freeser,* 29 Mont. 210 (74 Pac. 407). 2 Lewis' Eminent Domain (2 ed.), states the rule thus:

''It is apparent that, where part of a tract is taken the damages to the remainder can never be satisfactorily estimated without knowing how the works on the part taken are to be constructed. Take the case of a railroad through a piece of property. It may make a great difference whether it is built at the natural grade or in a deep cut or on a high embankment or trestle. If the works have actually been constructed before the damages are assessed, it has been held proper to take into consideration the actual condition of the works as affecting the damages.''   Section 481.

''Damages are to be assessed on the basis that the work will be constructed and operated in a skillful and proper manner. * * If the works are built before the assessment of damages is had, the damages should be assessed on the basis of the works as constructed, even if improperly constructed, for the condemnor should not be allowed to assert its own wrong.''   Section 482.

''The rights of the party condemning are confined to the land taken, and for any damages done to adjoining land by blasting, by occupation or encroach-

.ments, by depositing debris upon it, or by using it as a roadway, a recovery may be had." Section 573.

And in 20 C. J. 734, Section 189:

"Injuries from the operation of the improvement as well as from its construction must be considered."

To the same purport are some of the authorities cited by plaintiff. In *Davis* v. *New England Ry. Co.,* 199 Mass. 292, 295 (85 N. E. 475, 20 L. R. A. (N. S.) 1061, 1063), the law is stated in this language:

"Interference with light, air, and prospect does not constitute the taking of an easement in the land so interfered with, though it may result in damage to the property interfered with, and is a proper element of damage where land is taken."

6, 7, We believe the better rule would be that where the improvement has been completed before the action has been brought to determine the damages, all elements of damage directly flowing from the appropriation and the construction of the improvement should be determined. We can see no good reason for compelling the person whose land is taken for a public improvement to resort to an independent action to recover damages incidental to but directly resulting from the construction. Where the action to condemn is tried before the actual appropriation, nothing but the value of the land taken and the injury to the remaining parts of the tract should be considered. Other elements would be speculative. But where the actual appropriation has been made and the improvement constructed, the actual damages resulting can as well be ascertained and determined in an action to condemn as in a separate action on trespass. The spirit of our Code will be best applied by having all the elements

of damage determined in the one action. We do not mean to hold that trespasses, unnecessarily committed by those actually doing the work, should be assessed against the condemnor but only such elements of damage as result directly and incidentally from the construction of the improvement and the appropriation of the land. The alleged errors under consideration were submitted to the court in a motion to strike parts of the answer, on objections to certain testimony and to several of the instructions given. We do not deem it necessary to comment on these separately as all of the questions raised are answered in this general way.

Instruction No. 9 permitting the jury to consider the evidence in regard to the destruction of growing crops is not free from criticism. But considering the result, we do not believe that the faulty instruction constitutes reversible error. There was sufficient testimony to warrant the jury to find that the land taken was worth almost $2,000, the sum allowed in damages, and in addition thereto there was competent testimony to justify the jury in finding a substantial sum in favor of the defendants for the damages to the land not taken but forming a part of the tract.

8. Special stress is placed upon the court's instruction as to the measure of damages to those parts of the tract not taken. It is claimed by the plaintiff that the court in effect instructed the jury that if they found the damage to the tracts not taken exceeded the benefits peculiar to the tract by reason of the construction of the highway across it, they should add the amount of such damage to the value of the land taken. The contention is that the court eliminated

the benefits, unless they equaled or exceeded the damages. We do not believe this to be a fair construction of the instruction as a whole. Immediately following the instruction No. 6½, which is the one particularly complained of, is the following instruction, No. 7:

"I further instruct you that in determining the damages, if any, to the remainder of defendants' land left after the taking of the roadway, you must consider all of the evidence in the case, and from it determine the reasonable market value of those portions of defendants' lands not taken, as it was on the 4th day of April, 1924, the time when the complaint in this action was filed, and from the same deduct the reasonable market value of said property after the severance and construction of the highway. This difference between those values, if there shall be any, will be the amount of damages done by the opening of said highway to the balance of the land not taken. The law fixes this method of determining the damages, and it is your duty to follow it."

We believe that this instruction correctly states the law and that the jury could not have been misled as to the measure of damages.

We find no reversible error and the judgment is affirmed.                                    AFFIRMED.