74    231
176    61

I. W. Schiffer v. John C. Douglass.

No. 14,559.    (86 Pac. 132.)

SYLLABUS BY THE COURT.

1. TAXATION—*Excessive Levy—Tender of Valid Portion—Lien Not Discharged.* Where an excessive tax is levied against real estate, a mere tender of the valid portion of such tax to the county treasurer by the landowner and a refusal on the part of the treasurer to accept the tender will not relieve the land of the tax lien for the valid part of such tax.

2. CONVEYANCES—*Tax Deed Executed on Sunday—Tax Lien Not Destroyed.* The holder of a tax-sale certificate requested the county clerk to issue a tax deed thereon. A deed was executed and delivered within the time prescribed by section 7715 of the General Statutes of 1901, relating to floating liens. From the date of the deed it appeared to have been executed on Sunday. This fact was discovered more than four years after the sale of the land. *Held,* that the execution of the deed on Sunday was not such a violation of section 7715 as to destroy the tax lien under the certificate.

Error from Leavenworth district court; JAMES H. GILLPATRICK, judge. Opinion filed July 6, 1906. Reversed.

*C. F. W. Dassler,* for plaintiff in error.

*Dawes & Rutherford,* for defendant in error.

The opinion of the court was delivered by

GRAVES, J.: This is an action in ejectment, brought by a tax-deed holder against the owner in possession. The tax deed is dated September 3, 1899, was recorded October 23, 1899, and this action was commenced October 19, 1901.

The land was subject to taxation for the years 1894, 1896, 1897, 1898, 1899, and 1900. The amount of tax levied against the land in controversy for each of these years was in excess of the levy authorized by law. The owner of the land, during the month of December in each of these years, tendered to the county treasurer the full amount of tax legally assessed against the land

for that year. The tender was refused for the reason that the treasurer was not authorized to receive less than the whole tax charged against the property.

At the tax sale of 1895 the land was sold for the tax of 1894, and for want of other bidders was bid in by the treasurer for the county. On September 12, 1896, the plaintiff took an assignment of the certificate from the county, and afterward paid the tax levied against the land for the years 1896 and 1897. The land was again sold for the tax of 1898, and the tax of 1899 was charged to that sale. On June 20, 1900, the plaintiff redeemed the land from the last-mentioned sale, and afterward paid the tax of 1900. September 3, 1899, the date of the execution of the tax deed, was Sunday.

The owner of the land insists: (1) That his tender of the full amount of legal tax each year discharged the tax lien, and made any sale of the land for such taxes void; (2) that the tax deed, having been executed and acknowledged on Sunday, is void *ab initio*, and of no more effect than if no attempt had been made to convey the land; that more than four years have passed since the land was sold, and, therefore, the tax lien is lost, under the provisions of section 7715 of the General Statutes of 1901, being what is commonly known as the floating-lien law.

The plaintiff concedes that the tax deed is invalid as a conveyance, but insists that the tax lien has been preserved.

Tax proceedings are necessarily committed to the charge of officers, who occasionally make mistakes and sometimes misconceive the extent of their powers. It is the policy of the law, however, to collect all taxes legally imposed, and, in furtherance of this policy, the irregularities and omissions of tax officers will be disregarded whenever it is reasonably possible to do so. When by mistake an excessive tax is levied upon real estate, so much thereof as may be valid becomes a permanent lien on the land until released by payment or by operation of law. To preserve the security given by

this lien the legislature enacted section 7615 of the General Statutes of 1901, a part of which reads:

"A lien for all taxes shall attach to the real property subject to the same on the 1st day of November in the year in which such tax is levied, and such lien shall continue until such taxes and penalty, charges and interest which may have accrued thereon shall be paid by the owner of the property or other person liable to pay the same."

It follows that the valid part of the taxes in question became a lien on the real estate in controversy, and we are unable to see how or when it has become satisfied or released. We do not understand that a tender in such cases is equivalent to actual payment. When a landowner finds an excessive tax levied against his land he must either acquiesce in the imposition and pay it or resort to some tribunal having power under the law to give the relief desired. The county treasurer is not such a tribunal. The duty of that officer is to receive the tax charged against the property. He has no authority to determine the validity of any tax, nor to receive in satisfaction of the amount levied less than the whole thereof. A tender to the county treasurer of a part of the tax levied against real estate, made by the owner of the land for the purpose of thereby satisfying the tax or of releasing the lien, is an idle ceremony, having no legal significance. Tender to the county treasurer of a part only of a tax is useful only when made as one of the preliminary steps to a legal proceeding before some tribunal legally authorized and empowered to grant relief.

There are several remedies open to the owner of land under the circumstances above mentioned, among which are these: He may tender the valid portion of the tax and then perpetually enjoin the collection of the excess. He may wait until a tax purchaser attempts to enforce his tax deed and then have the court determine what part of the tax is valid, and pay it.

As a further security to the public section 142 of

the tax law, being section 7681 of the General Statutes of 1901, provides:

"If the holder of a tax deed or any one claiming under him by virtue of such tax deed be defeated in an action by or against him for the recovery of the land sold, the successful claimant shall be adjudged to pay to the holder of the tax deed, or the party claiming under him by virtue of such deed, before such claimant shall be let into possession, the full amount of all taxes paid on such lands, with all interest and cost as allowed by law up to the date of said tax deed, including the cost of such deed and the recording of the same, with interest on such amount at the rate of twelve per cent. per annum, and the further amount of taxes after the date of such deed, and interest thereon at the rate of twelve per cent. per annum."

We do not think that the tender made by the defendant in this case affected the tax lien as to the valid part of the tax levied against the land. The fact that the tax deed was executed and acknowledged on Sunday may render the deed void as an instrument of conveyance, but the lien for the tax remains as it was prior to the date of the deed. We do not agree with the contention that the lien for taxes is lost because of this ineffectual attempt to make a valid deed, by reason of the provisions of section 7715 of the General Statutes of 1901, which reads:

"When any real estate is or has been bid off for delinquent taxes to cities or counties and the tax certificates assigned, the lien thereof shall not be valid without a tax deed taken thereon after the expiration of four years from the date of such sale to the city or county where such assignment is made, more than one year prior to the expiration of three years from the sale."

This statute does not require that the deed provided for shall be a valid conveyance. Its manifest object was to prevent tax purchasers from holding tax certificates indefinitely. We do not think that a mistake in attempting to comply with this law destroys the tax lien. We think that the attempt on the part of the tax

purchaser to comply with this law by applying for a
deed within the time prescribed saved his tax lien.  He
did all that he could to preserve his rights as a tax
purchaser, and the mere fact that the officers omitted
to execute the deed as of the proper date should not
work injury to him.  To prevent such a result section
7678 of the General Statutes of 1901 was enacted.  It
reads:

"No irregularity in the assessment roll nor omission
from the same, nor mere irregularities of any kind in
any of the proceedings, shall invalidate any such pro-
ceeding or the title conveyed by the tax deed; nor shall
any failure of any officer or officers to perform the
duties assigned him or them upon the day specified
work an invalidation of any such proceedings or of
said deed."

Upon the whole case we conclude that the plaintiff
has a tax lien for the valid portion of the taxes assessed
against the land, together with interest and costs there-
on as provided by law.

The case having been tried by the district court
without a jury, and findings of fact and conclusions of
law having been filed, we can determine the final dis-
position of the case.  The judgment of the district
court is reversed, with direction to enter judgment in
favor of the plaintiff for $338.80, with interest thereon
from April 15, 1905, at the rate of six per cent. per
annum, and decree the same to be a lien on the land in
controversy, and, in case of failure to pay the same
within thirty days, that the land be sold according to
law; also, that a personal judgment be entered against
defendant for costs of suit.

All the Justices concurring.