Argued February 18, affirmed March 8, 1921.

## COLLINS *v.* UNITED BROKERS CO.

(194 Pac. 458.)

**Trial—On Motion to Direct Verdict for Defendant Inferences are in Favor of Plaintiff.**

1. In passing on a motion to direct a verdict for defendant, all competent evidence in the record is entitled to consideration by the court in the light most favorable to the plaintiff.

**Trial—Prima Facie Showing Requires Submission to Jury.**

2. A motion to direct a verdict is properly denied if there was sufficient competent evidence given at the trial to make a *prima facie* showing.

**Evidence—Market Price of Onions at Sacramento Held Shown by Evidence of Market Price at San Francisco.**

3. In action for failure to sell carload of onions consigned to Sacramento at market price there, evidence of the market price at San Francisco *held* competent and sufficient to show the market price at Sacramento in view of the interdependence of the two places, and the fact that under the contract, which was for a sale on 10 per cent commission, the real destination was San Francisco, Sacramento being the inspection point.

**Evidence—Judicial Notice Taken of Location of Sacramento.**

4. The court will take judicial knowledge of the fact that the geographical location of Sacramento, the capital city of the State of California, is about 90 miles northeast of the historical and commercial City of San Francisco.

**Trial—Litigants Entitled to have Theory of Cause Submitted.**

5. Every litigant is entitled to have his theory of the cause, within the pleadings and proof, fully and fairly submitted to the jury.

**Trial—Instructions Should be Few in Number and Couched in Plain Language.**

6. Instructions should always be given with a view to aid, and not to confuse, the jury, and this requires that the instructions

---

4. Judicial notice of geographical facts, see notes in 124 **Am. St. Rep.** 32; 12 **Ann. Cas.** 927.

should be as few as practicable, in view of the evidence, couched in plain language, addressed to common understanding.

**Appeal and Error—Error in Instructions not Reversible Unless Substantial.**

7. Error in the giving or refusing of instruction must, under Section 556, Or. L., substantially affect the rights of appellant to be reversible.

From Marion: GEORGE G. BINGHAM, Judge.

In Banc.

This is an appeal from the judgment on a verdict for $718.67, returned by the jury in the trial of *J. W. Collins and A. M. Bolter,* Plaintiffs and Respondents, v. *United Brokers Company,* a Corporation, Defendant and Appellant. The plaintiffs' theory of the case, as recited in their complaint, is substantially as follows:

That they contracted with the defendant in reference to supplying it with a carload of onions, to be sold on commission of 10 per cent; that plaintiffs, the growers of the onions, were to sort and sack them and prepare them for market; that thereafter the onions were to be loaded on a railway car at Brooks, Oregon, and consigned and shipped to the defendant. Plaintiffs assert that it was agreed that the onions were to be sold on open market at the going market price thereof at the time of their arrival at the point of destination. The complaint alleges that pursuant to said agreement the plaintiffs prepared a carload of onions for shipping, and that the onions were loaded and consigned to defendant at Sacramento, the car leaving Brooks on the 27th of February, and reaching Sacramento March 4, 1919; that the defendant sold said onions, and collected the proceeds thereof, contrary to the terms of the contract, in this: That the defendant refused to sell the onions on the open market for the market price when

they reached Sacramento, but, in violation of the provisions of the contract, it delivered the said car of onions to William A. Curtis & Co. to fill an order formerly taken by defendant for a car of onions to be shipped to Curtis & Co. for $1.50 per hundred. The complaint further alleges that the onions weighed 31,710 pounds, and that the market price obtainable at the time the carload of onions reached its destination was, net, $1,268.40.

The defendant specially admits that plaintiffs entered into a contract with it, by the terms of which it was understood between the parties that the plaintiffs would furnish a carload of onions, sorted and ready for market, and would load the onions upon the cars at Brooks, consigned to the defendant; that the defendant would ship the car to some market to be determined by it, and sell the onions upon the open market as such consignee, according to the ordinary and usual manner of handling consignments; that it would deduct a commission of 10 per cent for handling the onions, and pay over the remainder of the proceeds to the plaintiffs. In a first further and separate answer the defendant alleges, among other things:

"That on or about the twentieth day of February, 1919, the plaintiffs notified the defendant that they were ready and willing to commence delivery of a carload of onions in pursuance of said contract, and requested and directed this defendant to sell the same for the best price then obtainable; * * * that thereupon the said defendant notified the various markets with which it was in contact that it had ready for delivery a carload of fancy onions, and received an offer from Wm. A. Curtis & Co. of San Francisco, California, for said onions at a price of $1.50, f. o. b. San Francisco, which offer was by defendant ac-

cepted on behalf of the plaintiffs herein; that said onions were immediately shipped to Wm. A. Curtis & Co. of San Francisco, California, but upon arrival and inspection said onions were found to be not fancy selected Oregon onions, but sprouted and in poor condition, and required resacking and resorting * * ."

Upon refusal of the court to grant a new trial, the defendant appeals, assigning error as follows:

"Failure of the court to grant the motion of the defendant for a directed verdict in favor of the defendant.

"Failure of the court in refusing to give the instructions as requested by defendant.

"Failure of the court to grant the motion of the defendant setting aside the judgment and for a new trial."

                                          AFFIRMED.

For appellant there was a brief submitted over the name of *Mr. Chriss A. Bell.*

For respondents there was a brief prepared and presented by *Mr. Walter C. Winslow.*

BROWN, J.—1, 2. At the conclusion of the evidence, the defendant moved the court for an order directing the jury to return a verdict in its favor. The refusal of the court to grant the motion is predicated as error. In considering this motion, every reasonable intendment and every fair and legitimate inference which can arise from the evidence must be made in favor of the plaintiffs. It is elementary law in this state, that in passing upon defendant's motion for a directed verdict all competent evidence in the record was entitled to consideration by the court in the light most favorable to the plaintiffs. If there

was sufficient competent evidence given at the trial to make a *prima facie* showing, the court was required to deny the motion: *Harding* v. *Oregon-Idaho Co.,* 57 Or. 34 (110 Pac. 412); *Harrison* v. *Birrell,* 58 Or. 410 (115 Pac. 141); *Domurat* v. *Oregon-Washington etc. Co.,* 66 Or. 143 (134 Pac. 313); *Herbert* v. *Dufur,* 23 Or. 467 (32 Pac. 302). In the case last cited the court said:

"In deciding a motion for nonsuit, the court should assume those facts as true which a jury could properly find under the evidence; and if in any view of the evidence, taken in its most favorable light, a verdict may be rendered for the plaintiff, or if there are questions of fact which may be determined for the plaintiff, and if determined in his favor will entitle him to recover, the case should not be taken from the jury by a nonsuit."

This language is equally applicable when ruling upon a motion for an instructed verdict. In the case at bar the motion for a directed verdict was oral, and was grounded upon the absence of proof of the market price of onions in Sacramento on the day of the arrival in said city of the carload of onions involved in this litigation. We find from the record of evidence upon that subject, that there was sufficient competent evidence before the jury upon which to base a verdict for plaintiffs; that there was evidence which fairly, though indirectly, established the market price of onions in Sacramento. Plaintiff Bolter testified that the car was shipped from Brooks, Oregon, to Sacramento, on the 28th of February, 1919; that it would take five days to reach Sacramento, and that the market price of onions from February 28th to March 5th was $4 to $5 a hundred. Coplaintiff Collins testified, in relation to his under-

standing of the contract, that the carload of onions was to be sold at the place of destination; that he was offered $4 per hundred for onions at Brooks; that the market price from the 28th of February to the 5th of March, for onions of the grade shipped, showed a little decline. The attorney for defendant objected to this witness' testifying as to the value of onions at any place except f. o. b. cars Brooks, based on the San Francisco market. Witness then answered:

"A. The market price was $4. $4.05 was the price I was offered at Brooks, f. o. b. Brooks. * * I explained to Harris [defendant's agent] that if I didn't get * * $4 or better for them onions, I wouldn't let them move from Brooks station.

"Q. Your claim is you were to get the price of those onions when they arrived in Sacramento?

"A. Well, I was to get as good as the price in Brooks or better."

Mallory E. Enos, produce merchant, testified upon the part of defendant that the United Brokers Company shipped this carload of onions through Sacramento to San Francisco; that fancy selected Oregon onions were worth $4 per hundredweight; choice onions, $3.50 to $3.75 per hundred; ordinary grade, $3 to $3.25 per hundred; that the equivalent prices to shippers at Brooks, Oregon, of the various grades of onions on March 10, 1919, were as follows: Fancy selected Oregon onions, f. o. b. Oregon, $3.67½; choice, $3.17½ to $3.42½; ordinary, $2.67½ to $2.92½. Similar evidence was given by T. Pearson, produce broker; W. R. Larzelere of San Francisco, commission merchant. E. P. Tate, salesman of Wm. A. Curtis & Co., testified that—

"This car was purchased by the Wm. A. Curtis & Co. February 20, 1919, and received at San Francisco

March 10th; that the prices paid on March 10, 1919, by jobbers in San Francisco to shippers, and for several days prior and subsequent thereto, for onions of the grade and condition of those contained in Car #9758 was from $3 to $3.55 per hundred repacked. Fancy onions were selling at $4.25 per hundred; No. 1 grade, $4 per hundred; choice grade, $3.50 per hundred; ordinary grade, $3 per hundred."

R. L. Phillippi, manager of United Brokers Company, Portland, testified that the car was sold by his company in advance of its shipment, subject to confirmation and inspection of onions at Sacramento. Mr. Phillippi wrote defendant's representative R. W. Faulkner, at Sacramento, concerning this carload of onions, as follows:

"Out of Brooks, Oregon, yesterday, the 28th, containing 311 bags, weight 31710 lbs., SFRD. 9758 for Wm. A. Curtis & Company, San Francisco. We understand the car is to be accepted in San Francisco, *or rather Sacramento.* We have but little doubt that the car will be accepted on account of the market being so extremely high, we are forgetting about it. Incidentally, I wish that you and Mr. Myers could appreciate the trouble we have had getting this delivery. Naturally, the growers being offered 2½ to 3 cts., it is like pulling teeth especially when you are handling them for their account. There may be some sprouts on these onions upon their arrival, but this is the last car of good onions out of Brooks. * * As we have written Mr. Ross, there has been 8 or 10 cars of those Brooks onions cleaned up at extremely high prices."

3, 4. The record shows that the freight, plus war tax, on this carload, consisting of 311 sacks of Oregon Yellow Globe Onions, was $102.89. From the testimony and the letter written by Phillippi, it appears that Sacramento was a mere diverting point for the

purpose of inspection; that the real destination of the car was San Francisco. Under the showing made in the instant case, the evidence as to the market value of onions at San Francisco was competent evidence of the market value of that vegetable at Sacramento. The court will take judicial knowledge of the fact that the geographical location of Sacramento, the capital city of the State of California, is about 90 miles northeast of the historical and commercial City of San Francisco: 17 Am. & Eng. Ency. of Law (2 ed.), 941; 1 Modern Law of Evidence, Chamberlayne, 923; 16 Cyc. 858; *Schiffer* v. *Douglass,* 74 Kan. 231 (86 Pac. 132); *Johnson* v. *Atlantic Coast Line R. Co.,* 140 N. C. 574, 581 (53 S. E. 362); *McGrew* v. *Missouri Pac. R. Co.,* 177 Mo. 533 (76 S. W. 995). As aptly stated by Justice MOORE in *Hill* v. *Tualatin Academy,* 61 Or. 200 (121 Pac. 901):

"Judges, in viewing evidence in civil cases, * * ought not to disregard well-authenticated facts which they know as men."

Evidence of the market interdependence existing between San Francisco and Sacramento is of record. The law relating to the admissibility of such evidence is correctly declared in the case of *Wemple* v. *Stewart,* 22 Barb. (N. Y.) 159, as follows:

"Where there is no evidence of the value of the goods at the place of delivery, evidence is admissible of their value at other places in the neighborhood of the place of delivery, and also at distant places where there is a market for the same articles, in connection with proof of the expense of transportation between such places and the place of delivery: 5 Denio, 56; 8 Wend. 435; 7 Barb. (N. Y.) 18. It is only where the evidence is clear and explicit as to the value of the article at the place of delivery, that evidence of value at other places is inadmissible: 8 Wend. 436."

In the case of *Harris* v. *Panama R. R. Co.*, 58 N. Y. 660, which was an action for the killing of a race-horse on the Isthmus of Panama, the court held that proof of the value of the horse in San Francisco was admissible, it appearing that there was no local market for such animals. To like effect, see *Jones* v. *St. Louis etc. R. Co.*, 53 Ark. 27 (13 S. W. 416, 22 Am. St. Rep. 175), wherein it was held that—

"Where the value of personal property cannot be fixed by the proof of local markets, it may be done by proof of value at the nearest point where similar property is bought and sold, with proper addition or deduction for costs of transportation and the hazard and expense incident thereto, according as the property is held for sale or for use."

Abbott says:

"Evidence of the price at places not distant or in other controlling markets may be given, not for the purpose of establishing the market price of such other place, but for the purpose of showing indirectly, in the absence of direct evidence, the market price at the place of delivery; and hence, in connection with the market value at other places, evidence of the expense of transportation between such places is relevant": 1 Abbott's Trial Evidence (3 ed.), 808, 809. Also, see *Bump* v. *Cooper*, 20 Or. 527 (26 Pac. 848).

The court properly denied the motion for a directed verdict.

5–7. Every litigant is entitled to have his theory of the case, within the pleadings and proof, fully and fairly submitted to the jury: *Bingham* v. *Lipman*, 40 Or. 370 (67 Pac. 98). However, instructions should always be given with a view to aid, and not to confuse a jury, and this requires that the instructions should be as few as practicable in view of the evidence, couched in plain, simple language, addressed to common understanding, and where they are so, and

conform to the principles and policy of the law, it is enough: 11 Ency. Pl. & Pr. 151.

In the case at bar the court covered the points of the case as made by the pleadings and proof, and did not commit reversible error in refusing defendant's request for additional instructions.

"Upon an appeal from a judgment, the same * * shall only be reversed or modified for errors substantially affecting the rights of the appellant": Or. L. 556.

This case is affirmed.                    AFFIRMED.

BURNETT, C. J., concurs in result.