Argued July 6, reversed and remanded December 7, 1960

STATE HIGHWAY COMMISSION *v.*
PARKER ET AL
357 P. 2d 548

*Leslie B. Hampton,* Assistant Attorney General, Salem, argued the cause for appellant. On the brief were Robert Y. Thornton, Attorney General, Leonard I. Lindas, Charles Peterson and William A. Mansfield, Assistant Attorneys General, Salem.

*Orval Thompson,* Albany, argued the cause for respondent. With him on the brief was Mark Weatherford, Albany.

Before McAllister, Chief Justice, and Rossman, Perry, Sloan and Holman, Justices.

ROSSMAN, J.

This is an appeal by the State of Oregon through its Highway Commission from a judgment which the

circuit court entered condemning and appropriating to the state's use a tract of real property, described in the complaint and owned by the three defendants, upon the payment by the state of the sum of $3,740. The state as plaintiff-appellant deems the sum excessive.

In appealing, the state submits two assignments of error. The issue which they present is sufficiently revealed by the first of them which reads as follows:

"The court on direct examination of witness H. W. Snell erred in sustaining defendants' objection to questions directed to said witness to inform the jury of his market value investigation of sales of other properties in the vicinity of the subject property and particularly the physical factual similarity between such land sold and the land of defendants sought for a public use.

" 'Witness H. W. Snell upon direct examination testified:

" 'By Mr. William Mansfield:

" 'Q  In making your appraisal, did you consider the sales of other nearby and similar properties?
" 'A  Yes, sir.

" 'Q  Would you describe, don't tell me the amount paid yet, but will you describe the sales?
" 'A  As to location?

" 'Q  Location, general appearance.
" 'A  One sale was across the highway.

" 'Mr. Weatherford: I object to this, as not proper direct examination.'

\*　　\*　　\*

" 'Court: Show on the record, the objection is being sustained, and they are making an offer of proof.' "

The defendants own a tract of 160 acres of land of which the state sought to acquire 8.4 acres for the

purpose of improving the Corvallis-Newport highway. Upon the trial in the circuit court the issue was the amount of just compensation which the state should pay for the 8.4 acre parcel. The state contended that $684 was the appropriate sum, and the defendant insisted upon $5,250.

In order to support its position the state inquired of an expert-value witness, the aforementioned H. W. Snell, concerning the recent sale of three properties which it said were comparable to the defendants'. The latter's objection, "The law in Oregon has always been, as I understand it, in the practice that there can't be any direct detail examination of other sales, except on cross examination" was sustained and thereby the witness was prevented from giving the information which the state sought. The offer of proof discloses that if Mr. Snell had been permitted to testify he would have reported upon three sales including such details concerning each as the price which the property brought, the date of the sale, a description of the property and the location of the latter.

The sole issue presented by this appeal is whether or not an expert-value witness may testify on direct examination as to the price recently paid for a property similar to the defendants' by a willing purchaser to a willing seller. In considering the issue we will confine ourselves to voluntary sales and disregard those of a forced nature. We will assume that (1) the property which the condemning party says is similar is located sufficiently near the land in suit; (2) the property which is purportedly similar has features such as size, improvements and lay of the ground substantially resembling those of the land in question so that its sale price will tend to indicate the value of the property under consideration if such sales have a

tendency of that nature; and (3) the witness is sufficiently informed and well versed in real estate matters so that the trial judge will be warranted in accepting his testimony as that of an expert. In resolving the issue we will give attention to these two questions: Does evidence of the price paid for a similar property throw light upon the value of the property under condemnation? Will reception of evidence showing the sum paid for other property or properties consume an undue amount of time or confuse the issue?

Before an investor purchases securities, whether listed upon a stock exchange or not, he acquaints himself with the prices recently paid by others for the security which he plans to buy. He acts upon the belief that money talks and that its most cogent utterance reveals market value. Money is the common denominator by which properties that are bought and sold from time to time are generally judged. Prices paid, unlike the abstract opinion of an expert, represent the money ventured by those who enter the market. They are akin to the verdict of a jury. No purchaser wishes to pay more than the going price, and no seller in the absence of special circumstances wishes to accept less. We take the following from Wigmore on Evidence, 3rd ed., § 463, page 503:

> "When the conduct of others indicating the nature of a salable article consists in offering this or that sum of money, it creates the phenomena of *value*, so-called. For evidential purposes, Sale-Value is nothing more than the nature or quality of the article as measured by the money which others show themselves willing to lay out in purchasing it. Their offers of money not merely indicate the value; they *are* the value; *i.e.* since value is merely a standard or measure in figures, those sums taken in net potential result are that standard."

We recognize a difference in the manner in which the price paid for a share of stock is taken as the security's market value and the price paid for a parcel of real property, similar to the defendants', is treated as indicative of the latter's value. No two parcels of land are identical, and sales of realty, similar to that under condemnation, do not occur with the frequency of sales of listed securities. Nevertheless, recent sales of real property, even if few in number, may produce the by-product of market value.

If the parcel under eminent domain has not been upon the market for a score of years or more it is necessary to take into consideration the prices paid recently for similar properties which are located in the same vicinity and which have corresponding characteristics. If the subject of inquiry is the market value of a share of stock for which there is a daily active market, receipt of evidence showing prices paid recently for other shares of the same company does not offer significant prospects of creating delay in the trial of the case, confronting the adversary with surprise or diverting the jury's attention from the real issue. But it is claimed that the offer of evidence showing the prices paid for tracts of real property supposedly similar to the defendant's may involve the trial in collateral difficulties of the kind just mentioned.

It is apparent from the foregoing that in fashioning a rule to govern the admissibility of evidence of the kind aforementioned, one must take note not alone of the fact that the evidence is relevant, but also of the prospect that its receipt will involve the trial in matters of collateral difficulty. An auxiliary policy which helps at times to shape the rules of evidence, and which is discussed in Wigmore on Evidence, 3rd

ed., § 1865, excludes some proof if its value is not sufficient to warrant the delay or confusion of issues which its receipt may occasion.

If the price paid for similar property is inadmissible, then the only alternative is to receive the opinions as to the value of the property under condemnation which are offered by those qualified to express them. Accordingly, if the price paid for a property in an actual sale is inadmissible, and the state claims that its market value is, say $500, it will not be in a position to show that a similar parcel was recently sold for that amount, but will be confined to the opinions of experts. And if the owner claims that the property's value is $1,000 he will not be permitted to show that an identical tract recently sold for that amount, but will be forced to depend upon an opinion as to value. Thus, in order to hasten the trial and simplify its issues the court will dispense with known facts and accept the species of evidence which has brought to the administration of justice its most severe criticism—opinion evidence. Further, this will be done in the name of expediency; that fact renders it appropriate to quote the following:

> "In no case that we know of is it ever said that a defense shall be admitted if it is easily proved and rejected if it would give the Court great trouble to investigate it." *Godard v. Gray* L.R. 6 Q.B. 139.

If it is said that upon cross examination questions may be put to the expert as to sales of similar tracts, then the question at once arises, why can not that evidence be received on direct examination. It seems reasonable to infer that evidence received on cross examination showing the prices paid for similar tracts of land and the characteristics of the tracts will create

as much delay and other consequences as if the evidence were received on direct examination.

This court has seven times spoken in eminent domain proceedings concerning the admissibility of evidence of the kind with which we are now concerned. It has ruled at least three times that such evidence is admissible. In making its rulings it has never intimated that evidence of the kind with which we are now concerned creates delay, confronts the other party with surprise, or confuses the issues of the case. We will now take note of those seven decisions.

*La Grande v. Rumelhart*, 118 Or 166, 246 P 707, was an eminent domain proceeding instituted by the city of La Grande to condemn a right of way for a public thoroughfare through property belonging to the defendants. We now quote from the decision:

"Were witnesses Pierce and Liley qualified to testify to the value of land? Both of these witnesses testified that they had lived in the same locality in which the land involved is located for a number of years; both were owners of real property in that locality, and both knew of a tract of land of the same general quality in the same community as the land appropriated and which had been recently sold by voluntary sale. Under the general authorities and the authorities in this state they were competent to testify: Lewis' Eminent Domain (2 ed.), § 443; 10 F.C.L. 220, 221, § 188; Portland v. Investment Co., 64 Or 410 (129 Pac. 756); Chicago & Western Indiana Ry. Co. v. Heidenreich et al., 254 Ill. 231 (98 N.E. 567, 28 Ann. Cas. 266, and note beginning on page 271); note to Hubbell v. City of Des Moines et al., Ann. Cas. 1916E, beginning on page 598. The market value of any commodity as well as land is determined by the price for which the same is bought and sold in ordinary voluntary transactions. It would seem, therefore, especially in a locality where few sales

are made, that it would be competent to have a witness who knows of a voluntary sale having been made at or about the time that the land was appropriated testify of the market value of that land. * * * Again it is the duty of the trial judge as a preliminary question of fact to determine whether or not a witness is qualified as an expert, and the appellate courts will not disturb the decision of the trial judge, unless there is no evidence to sustain the preliminary decision of that court: Rugenstein v. Ottenheimer, 70 Or. 600, 603 (140 Pac. 747); Portland & O.C. Ry. Co. v. Sanders, 86 Or. 62, 72 (167 Pac. 564); Portland-Oregon City Ry. Co. v. Penney, 81 Or. 81, 90 (158 Pac. 404); 13 Ency. of Evidence, 486, 489."

It will be noticed that the decision held that the price paid recently for a similar parcel was admissible. In so holding the court took pains to call attention to the preliminary duty owed by the trial judge to assure himself of the witness's competency. In that case the witness was not an expert. The decision made no suggestion that evidence of that character offers threats of delay, surprise or confusion.

*Portland v. Investment Co.,* 64 Or 410, 129 P 756, was an action by the City of Portland against Investment Company for an assessment of damages for property condemned for a street. In order to establish the amount payable the city called one J. L. Pettinger, an expert. Our published decision does not state that Pettinger was called by the city, but in preparing this opinion we returned to the record. The brief submitted by the defendant-appellant (Investment Co.) in that case states:

"One J. L. Pettinger was called to testify on behalf of the plaintiff, and over the repeated objection of counsel for the defendant the following questions were asked."

Thus, the challenged testimony was presented by the city (plaintiff). We now quote from the decision.

"After qualifying and testifying to the value of the lots in question, as further evidence of the values, he was asked as to sales of lots in that immediate locality about that time, to which he answered that he had sold for $600 each lots 5 and 6, Block 9, in West Piedmont, three blocks from the property in question."

In affirming the judgment this court said:

"We think this indicates that they are in the same locality, and it was not error to overrule the objection as to the competency of such evidence. See Oregon R & N Co. v. Eastlack, 54 Or 205 (102 P 1014: 20 Ann Cas 695), where the question is discussed."

Evidently the court did not find that the receipt of evidence showing the price received upon the sale of similar property created delay, surprise or other undesirable consequence. It did not mention any after-effect of that kind. Manifestly, the court believed that the sum recently paid for a similar property was evidence of the market value of the property under eminent domain proceedings. The evidence was held admissible.

*Oregon R & N Co. v. Eastlack,* 54 Or 196, 102 P 1011, 20 Ann Cas 692, was an action by a railroad for the condemnation of some lots in the city of La Grande. The railroad sought to acquire the defendant's property and some other tracts in connection with a program of constructing new facilities. After one of the plaintiff's value experts had testified on direct examination that the defendant's lots were worth $100 to $150 each, according to the lay of the land, he was forced on cross examination, over the plaintiff's ob-

jections, to testify that the plaintiff had paid $5,000 for a near-by block which it needed in the same construction program. In the same manner the witness was forced to testify as to the price paid by the plaintiff for another parcel which it also included in its project. Another witness for the plaintiff after expressing his opinion as to the value of the defendant's lots was required to testify on cross examination over the plaintiff's objections that 12 or 15 years ago he owned those lots and to state the price which he received for them when he then sold them. He was also required, over the plaintiff's objections, to testify that he and his son sold a block of land to the plaintiff for $5,000 which formed a further part of the plaintiff's construction project. Still another witness gave testimony which was based upon the prices which the plaintiff had recently paid for the property which formed part of its expansion program. It is seen from the foregoing that the defendant cross examined several witnesses concerning divers sales of property, yet the opinion mentioned no difficulties such as delay, surprise or confusion of issues conceivably resulting from the receipt of that evidence. Nor did the opinion indicate any doubt that recent sales made by a willing seller to a willing buyer revealed market value. The decision said:

> "* * * There appears to be some conflict of judicial authority upon the question whether in proof of value, evidence of particular sales is admissible. The preponderance of authority, however, supports the affirmative of this proposition. * * *"

It then quoted from Elliott on Railroads, § 1036, the following:

> " 'It is held that evidence of the selling value of

lands in the neighborhood may be given, as tending to establish a basis from which the landowner's damages can be assessed in cases where the land taken is not shown to have any definite market value * * *'."

The decision, after taking note of cases which admitted upon cross examination sales price, declared:

"* * * On the other hand, the propriety of allowing proof of the sales of similar property to that in question, made at or about the time of the taking, is said by Mr. Lewis on Eminent Domain (Volume 2, § 443) to be 'almost universally approved by the authorities.' * * *"

The court found it unnecessary to pronounce a rule "upon the controverted question of the admissibility of particular sales" as evidence of the value of the defendant's land because "it appears to be conceded by most of the cases that what the party condemning has paid for other property to be used in the same enterprise is incompetent." For the reason just indicated the testimony which was based upon the prices paid by the railroad for properties included in its expansion program was held improperly admitted.

The decision further declared:

"* * * If the owner has purchased the property within a time so recent that its cost will afford any fair indication of its present value, it has been held by some courts that it is competent to show the cost * * *'."

but ruled that the testimony adduced upon cross examination as to the price paid by the witness 12 or 15 years previously was too remote. Thus, we see that the testimony was ruled inadmissible, not upon any ground that the price recently paid for property similar to that under condemnation was not competent

to show its value, but because the evidence received did not conform to the rule. It will be recalled that *Portland v. Investment Company,* supra, cited the decision just reviewed as support for its holding in favor of admissibility.

*Portland v. Tigard,* 64 Or. 404, 129 P 755, 130 P 982, an eminent domain proceeding filed by the city of Portland, ruled:

> "It was not error for the court to exclude testimony as to the price paid by the defendant for the property two and one-half years before, as the time was too remote, and not a proper criterion of present values."

At least by indirection the rule was recognized that prices recently paid for similar property is admissible to show market value.

*Pacific Ry. & Nav. Co. v. Elmore Packing Co.,* 60 Or 534, 120 P 389, states:

> "The amount of damages sustained or anticipated by a party in consequence of the proposed condemnation of his land to a public use cannot be estimated by the compensation paid by a railway company for the fee or easement in adjoining or similar land. The rights of an owner to employ his property in such manner as best to conserve or promote his interests are not to be measured by the generosity, necessity, or estimated advantage which may have induced others to part with the title to their real estate, or to relinquish claims for damages by reason of injuries thereto: *Oregon R. & N. Co. v. Eastlack,* 54 Or. 196 (102 Pac. 1011). See the notes to this case. 20 Ann. Cas. 695."

We take the following from *Coos Bay Logging Co. v. Barclay,* 159 Or 272, 79 P2d 672:

> "Evidence of sales of neighboring lands, even where permitted, is not admitted unless voluntary

on both sides. A sale which is not voluntary has no tendency to prove market value. It is not competent for either party to put in evidence the amount paid by a condemning party to the owners of neighboring lands taken at the same time and as part of the same proceedings, however similar they may be to that in controversy, whether the payment was made as the result of a voluntary settlement, an award or verdict of a jury. The rights of an owner to recover just compensation for the taking of his land are not to be measured by the generosity, necessity, estimated advantage or fear or dislike of litigation, which may have induced others to part with title to their real estate or to relinquish claims for damages by reason of injuries thereto; and it would be equally unwise, unjust and unpolitic to make it impossible for a corporation to compromise the claims of one owner without furnishing evidence against itself in the cases of all others who had similar claims. If a sale is made to a corporation about to institute condemnation proceedings, if it cannot acquire the land by purchase at a satisfactory price, the price paid is not a fair test of market value. * * *"

*Dallas v. Boise,* 44 Or 302, 75 P 208, was an action by the city of Dallas for the condemnation of real property, water, and water rights required by the city in the construction of its water works system. The trial judge sustained objections to questions submitted to witnesses for the defendants in which information was sought from them as to value of water powers at a point two miles from the water power in question. This court ruled:

"* * * Unless there was a marked similarity in the conditions attending and surrounding the respective water powers, so as to make their values relatively equal, the testimony could have been of no definite or material utility in determining the value of the particular water power concerned, or

the amount of injury thereto. Such a similarity was not made to appear, and hence there was no error in excluding the testimony proffered."

New York, which at one time had not employed the rule of admissibility embraced it in 1949. We take the following from *Village of Lawrence v. Greenwood,* 300 NY 231, 90 NE2d 53:

"We no longer adhere to the rule which was decisive in the Robinson case, supra. Although conditions prevalent during the cluttered era of the elevated railroad litigation—when the statement last quoted above was written—may have supplied the reason for the ruling then made, we know of no conditions affecting the trial of cases today which warrant the exclusion of relevant testimony in favor of trial expediency. Upon this problem the terse comment by Judge Holmes, as he then was, is apposite—'* * * so far as the introduction of collateral issues goes, that objection is a purely practical one,—a concession to the shortness of life.' *Reeve v. Dennett,* 145 Mass. 23, 28, 11 N.E. 938, 943.

\* \* \*

"Instances there may be where proof of sales of comparable property may prompt a line of inquiry which will develop collateral issues likely to confuse the fact-finders and prolong the trial. We regard such disadvantages, however, as more than compensated by the benefit to be gained by the receipt of such evidence subject to the exercise, by the tribunal which fixes value, of its discretionary power to draw the line of exclusion wherever confusion is created by collateral issues."

The text writers favor admission on direct examination of this evidence. 5 Nichols, Eminent Domain, § 21.3, page 277 (3rd ed. 1952), states:

"Actual experience in the trial of land damage cases in states in which evidence of this character

is admitted does not show the objections mentioned above to be as formidable as supposed. If the admission of such evidence is regulated with reasonable judgment by the presiding justice, it throws light upon the issue before the jury as nothing else can. Experts upon one side or the other can say what they think the land is worth and still leave the jury in doubt as to which side to believe; but if it can be shown that land of the same character upon the same street was sold with reasonable frequency at a certain price per foot at or about the time of the taking, there is something definite for the jury to rely on, and actual sales as a criterion of value in such a case are almost as conclusive as the daily quotations of the exchange in the case of corporate stocks. Of course, cases in which values are so clearly fixed are not often brought to trial, but it is an unusual case in which no evidence of the sales of neighboring land can be offered which will not be in some degree helpful. The disadvantages arising from the use of such evidence are more than compensated for by the benefits which are likely to come to the jury from its reception."

See also McCormick, Evidence, § 166 (1954) ; Wigmore, Evidence, § 463 (3rd ed. 1940); 1 Orgel, Valuation under Eminent Domain, § 137 (2d ed. 1953).

We quote the following from the section (§ 166) of McCormick on Evidence just cited:

"Any tract of land is considered unique, and consequently it is in cases of land valuation, and especially in condemnation cases, that the question of admissibility of evidence of prices paid on other sales is most frequently discussed. A few states have been unwilling to admit such evidence save in exceptional circumstances. This seems to put too heavy a strain on opinion evidence and the general knowledge of the jurors, and the view of the majority of courts which admits such evidence,

within safeguarding limits, seems preferable. These safeguards are the following: The sales of the other tracts must have been sufficiently near in time, and the other land must be located sufficiently near the land to be valued, and must be sufficiently alike in respect to character, situation, usability, and improvements, to make it clear that the two tracts are comparable in value and that the price realized for the other land may fairly be considered as shedding light on the value of the land in question. Manifestly, the trial judge in applying so vague a standard must be granted a wide discretion."

■ The general rule for the determination of the market value of property admits in evidence the price paid for similar property recently sold. Sutherland on Damages (4th ed) § 447 states:

"Evidence of the price for which the property in question or other like property sold at a sale made under normal conditions is usually competent to show its value   *   *   *."

We have accepted that rule. *Ridgeway v. McGuire*, 176 Or 428, 158 P2d 893 (1954), was an action by a principal-grantor against the agent-grantee to recover secret profits taken by the agent when he purchased the property for himself and later resold it at a profit. At the trial the resale price obtained by the agent-grantee was received in evidence over objection. This court held the price was admissible and "was competent evidence of the value of the property" upon which to ascertain the amount of secret profit. Similarly, in *Collins v. United Brokers Co.,* 99 Or 556, 194 P 458 (1921), the court accepted as evidence the market price of comparable goods to be employed as a foundation for damages.

■ We now return to our seven previous decisions which were written in eminent domain cases and which

are summarized in preceding paragraphs. None of them intimated that the reception of evidence showing the price recently paid for a similar property by a willing buyer to a willing seller offers threats of delay, surprise, confusion or other ill result. Three of them (*La Grande v. Rumelhart, Portland v. Investment Co.* and *Dallas v. Boise*) constitute clear holdings that the price recently paid by a willing buyer to a willing seller for a similar property is admissible upon direct examination in cases of this kind. *Oregon R & N Co. v. Eastlack* is a holding that such evidence is also admissible upon cross examination. We have no doubt as to the admissibility of such evidence.

■ The assertion is made that an expert may state the basis of his opinion, and that that fact offers an additional opportunity for the admission of the kind of evidence which we have been considering. *Stroh, Administrator v. Rhoads,* 188 Or 563, 217 P2d 245, is a holding of that character. However, if an expert states the ground upon which his opinion is based, his explanation is not proof of the facts which he says he took into consideration: Wigmore on Evidence, 3rd ed., § 655. His explanation merely discloses the basis of his opinion in substantially the same manner as if he had answered a hypothetical question. It is an illustration of the kind of evidence which can serve multiple purposes and is admitted for a single, limited purpose only.

The question remains, however, as to the type of witnesses who may testify as to the price paid for the similar property.

In the La Grande case the witnesses, two in number, were not experts but owned and lived upon property in the vicinity of that under condemnation. According to the decision, each was an individual "who

knows of a voluntary sale having been made at or about the time" of the institution of the condemnation case. They possessed the requisite knowledge. The decision held that they were competent as witnesses. It pointed out, however, that competency is a preliminary question of fact for the determination of the trial judge.

In *Portland v. Investment Co.* the witness whose testimony was held to be admissible was familiar with the sale of the similar property concerning which he testified because he himself was the one who had made the sale.

In *Oregon R & N Co. v. Eastlack* the evidence failed to meet the required standards even though it was received on cross examination because the court held that the price paid or received for property subject to condemnation is not a fair indication of its market value. The decision also ruled that another item of evidence which the trial court received was inadmissible because it concerned a sale made 12 or 15 years previously. Each of the witnesses who in that case gave the challenged testimony was familiar with the sales concerning which he testified because he himself had participated in them.

*Portland v. Tigard* held that a sale made two and one-half years before was too remote.

*Pacific Ry and Nav Co. v. Elmore Packing Co.* and *Coos Bay Logging Co. v. Barclay* are two more holdings that the price paid for property under condemnation is inadmissible.

*Dallas v. Boise* employed the rule that before the price paid for a property purportedly similar can be received as evidence the party offering it must first establish similarity as a matter of fact.

In the case now before us the parties seemingly

treat the witness, Mr. Snell, whose testimony was ruled inadmissible, as an expert. Our examination of the record indicates that the trial judge also so regarded him. It does not appear that Snell himself participated in the sale of the three properties which he was asked to describe. The transcript of evidence before us states that it is incomplete, but it denotes that Snell, in addition to examining the three properties, spoke to those who had participated in the sales, examined the deeds, took note of the amount of the canceled federal revenue stamps and familiarized himself with other pertinent matters.

■ As was ruled in the La Grande case, the competency of a witness who is called as an expert is a preliminary matter which is addressed to the sound discretion of the trial judge. Wigmore on Evidence, 3rd ed. § 561, is a vigorous proponent of the rule that the competency of the would-be expert must be left with the trial judge. He says:

> "Secondly, and emphatically, the *trial Court must be left to determine,* absolutely and without review, the fact of possession of the required qualification by a particular witness."

This court has not gone so far as to assign completely to the trial judge's province a ruling upon the would-be expert's qualifications, but it has gone far in that direction: *Miller Construction Co. v. Drake Co.,* 221 Or 249, 351 P2d 41.

■ It is impossible to create a yardstick by the use of which the competency of a would-be expert-value witness can be readily determined. Witnesses may not agree upon the standard which is to be used in measuring value. Whether or not the person who is offered as an expert should have had some special experience

in determining values, or have had an acquaintanceship with the property about which he is asked to give information, are matters which are worthy of attention by the court which will determine his competency. Wigmore on Evidence, 3rd ed. § 714, gives the question intelligent analysis.

In the instance before us Snell was asked not merely to express an opinion about the property's value but also to give information about the recent sale of other properties in the vicinage. Since he himself did not make the other sales it is fair to assume that at least some of his knowledge of them must have been of a hearsay character.

Some men keep themselves constantly informed concerning real estate, its sale, development, lease and mortgage. They are appraisers or real estate agents. Information constantly comes to them, partly through the transactions which they consummate and partly through trade channels. They render themselves familiar with values. The information which daily comes to them is blended and combined with their other knowledge concerning values.

■ *Stewart v. Commonwealth,* Ky, 337 SW2d 880, devoted considerable attention to the problem which we are now analyzing. In holding the testimony of the expert witness admissible the court considered the hearsay feature. Concerning it, the decision said:

> "It is quite often true that the most thorough, comprehensive and accurate professional appraisals are based almost entirely on 'hearsay' in the legal sense of the word. Persons who appraise or deal in real estate professionally make it their business to keep abreast of current transactions. The value of an appraisal depends very largely on the manner in which it is developed. It is of importance to the court and jury to know how it was made and on

what information it was based. If some or all of that information was acquired by hearsay, but through the customary channels of the trade, or by methods recognized as standard in the making of appraisals, we see no useful purpose in a rule of absolute exclusion. Therefore, confining the effect of this opinion to witnesses whose qualifications include experience in appraising or dealing in real estate *as a business,* we hold that testimony as to the prices paid in comparable sales is not inadmissible merely because it is secondary or hearsay evidence. * * *"

We concur in that analysis of the issue.

■ The state should have been permitted to show the prices that were paid for the similar properties if the sales were recent and voluntary. We are not sufficiently familiar with Snell's competency to determine whether he should have been permitted to testify. That was a preliminary question for the trial judge. The latter did not rule that Snell was not competent, but held that evidence of prices paid for similar properties upon voluntary sales was not admissible upon direct examination. In so ruling he erred.

He should have determined whether Snell possessed sufficient knowledge of real property, its sales and values to entitle his information concerning them to value. The fact that he may have gained some of his information from sources of a hearsay character would not in itself exclude his testimony. Obviously, he should have been in a position to state whether or not the properties concerning which he proposed to testify were sold in voluntary transactions or in coerced sales. Before receiving his testimony the trial judge should have conducted the required preliminary examination.

This opinion does not hold that the expert's testimony is admissible as substantive evidence. It goes no further than to hold that the testimony which he gave as to other sales is admissible merely as a foundation of his opinion.

Without resorting to further analysis we express our belief that the two assignments of error must be sustained.

Reversed and remanded.