Argued June 4, affirmed November 21, 1962

# CITY OF PORTLAND *v.* HOLMES
### 376 P. 2d 120

*Glenn R. Jack,* Oregon City, argued the cause for appellant. With him on the briefs were Jack, Goodwin & Anicker, Oregon City.

*A. Allan Franzke,* Portland, argued the cause for respondent. With him on the brief were Mautz, Souther, Spaulding, Kinsey & Williamson and Douglas J. White, Jr., Portland.

Before MCALLISTER, Chief Justice, and WARNER, SLOAN, O'CONNELL and LUSK, Justices.

WARNER, J.

This is a condemnation action brought by the plaintiff, City of Portland, acting by and through the Portland Development Commission, as the duly designated Urban Renewal Agency of the City, against the defendant, Helen C. Holmes, for the acquisition of certain real property owned by her, located in a planned renewal area. From a judgment in favor of the City placing the value at $9,600 instead of the $27,000 demanded by defendant, she appeals.

The defendant predicates her appeal upon three alleged errors: (1) the trial court's denial of her motion to disqualify all jurors who were taxpayers in the City of Portland; (2) the court's refusal to admit

evidence of other sales of property made to the condemning authority; and (3) the denial of defendant's motion for a mistrial in view of a certain statement of plaintiff's counsel during the course of the trial.

The defendant's first assignment presents the question: are residents and taxpayers of the City condemning authority who are called as prospective jurors subject to challenge for implied bias under ORS 17.140(4), which reads:

"A challenge for implied bias may be taken for any or all of the following causes, and not otherwise:

"* * * * *

"(4) Interest on the part of the juror in the event of the action, or the principal question involved therein."

Defendant places her reliance on four decisions of this court, all rendered prior to 1931 and all holding that the prospective jurors in suits or action which might result in a money judgment against a governmental area wherein they were taxpayers were subject to challenge for implied bias under the foregoing statute.[1]

The rule reflected by the cases cited by the defendant continued to prevail as to all governmental agencies until 1931 when it was relaxed by the legislature as to cities in proceedings for the condemnation of property for the establishment, laying out, extending or widening of streets and other public highways

---

[1] The decisions referred to are: City of Portland v. Kamm, 5 Or 362, 368 (1874), an action for condemnation by the city; Ford v. Umatilla County, 15 Or 313, 322, 16 P 33 (1887), an action to recover damages for injuries to certain personal property because of a defective bridge; Multnomah County v. Willamette Towing Co., 49 Or 204, 218, 89 P 389 (1907), an action by the county for damages to one of its bridges; and Elliott v. Wallowa County, 57 Or 236, 238, 109 P 130, Ann Cas 1913A, 117 (1910), an action to recover damages for road construction.

or rights of way for drains, sewers or aqueducts and other subjects of public improvement. (Oregon Laws 1931, ch 345, p 601) The 1931 Act was comprehensive and laid out the procedures to be employed in all condemnation proceedings undertaken by cities. Section 3 thereof (now ORS 223.125) provided as follows:

"* * * The fact that a juror may be a taxpayer upon property within the city shall not be ground for challenge unless he is the owner of property to be appropriated * * *."

Subsequently, the powers accorded the cities under the Act of 1931 were extended in whole or in part to various newly-created entities of cities by the acts hereinafter referred to.

In 1937 the legislature promulgated what is known as the Housing Authorities Law with application limited to cities having a population of 5,000 or more ('Oregon Laws 1937, ch 442, p 704). This is codified as ORS 456.005 to 456.230. Section 12 of the act confers the power of eminent domain upon a Housing Authority when created and vests it with three alternative proceedings in the exercise of its powers of condemnation. Section 12, although subsequently amended, remains substantially the same and now appears in our code as ORS 456.145, which reads so far as pertinent here:

"* * * An authority may exercise the power of eminent domain in the manner provided for in the laws of this state for the condemnation of lands or rights of way by public or quasi public corporations for public use or for corporate purposes; or in the manner provided by law for the appropriation of real property, or rights therein or thereto, by private corporations; or in the manner provided by any other applicable statutory provisions for the exercise of the power of eminent domain."

■ We construe ORS 456.145 as extending to jurors in condemnation cases instituted by Housing Authorities the same immunity from challenge for bias as is granted under ORS 223.125 to a taxpayer-juror in like suits when brought by cities.

The instant action is, however, brought under the power conferred by Oregon Laws 1951, ch 373, p 574. This act is supplemental to the Housing Authorities Law, supra, and is designed to amplify the powers created by the initial act of 1937 by authorizing the Housing Authority of any municipality to clear blighted areas and make the property therein available for redevelopment. Defendant's property is situated in such an area. Section 3 of the Act of 1951, codified as ORS 457.040, provides, in part:

"(1) In undertaking redevelopment projects pursuant to ORS 457.030 a housing authority shall have all the rights, powers, privileges and immunities of an authority under the Housing Authorities Law and any other law relating to slum clearance and housing projects for persons of low income in the same manner as though all laws applicable to slum clearance and housing projects were applicable to redevelopment projects and undertaken under this chapter, except that ORS 455.155 and 456.160 do not limit the power of an authority in event of a default by a purchaser or lessee of land in a redevelopment plan to acquire property and operate it free from the restrictions of those sections."

Thus, we find that the provisions of ORS 223.125, granting taxpayers immunity to challenge for bias because of their taxpayer status are likewise conferred by reference upon taxpayers who are called as jurors in condemnation proceedings instituted by city Housing Authorities. ORS 456.145 and 457.040, supra. This

conclusion demonstrates that defendant's first assignment is without merit.

For her second assignment the defendant contends that the court erred in refusing to admit evidence of another sale of property to plaintiff located in the same renewal area.

■ There can be no question that evidence of *voluntary sales* of similar property in the vicinity of property sought to be condemned is admissible as independent evidence of the value of the property in question. *City of Portland v. Therrow,* 230 Or 275, 369 P2d 762, 765 (1962); *Coos Bay Logging Co. v. Barclay,* 159 Or 272, 291, 79 P2d 672 (1938); and *State Highway Commission v. Parker,* 225 Or 143, 357 P2d 548 (1960), and cases there cited. But the foregoing rule does not extend to *involuntary sales.* Here, the evidence tendered by defendant related to the value of a parcel immediately north of Mrs. Holmes' parcel and which was situated within the same urban renewal area as was defendant's property and previously sold to the plaintiff-condemnor.

The exception to the rule respecting *involuntary sales* is as set forth in *Coos Bay Logging Co., supra,* where the court says at 291:

"Evidence of sales of neighboring lands, even where permitted, is not admitted unless voluntary on both sides. A sale which is not voluntary has no tendency to prove market value. It is not competent for either party to put in evidence the amount paid by a condemning party to the owners of the neighboring lands taken at the same time and as part of the same proceedings, however similar they may be to that in controversy, whether the payment was made as the result of a voluntary settlement, an award or verdict of a jury. * * *"

This exception has long been the rule in Oregon.[2]

In her brief defendant concedes that the authorities which she cites from other jurisdictions are not in accord with *Coos Bay Logging Co.*, supra. Nor does it accord with statements found in *State Highway Commission v. Parker*, supra.

■ Defendant would have this court extend the reasoning and the rule of the *Parker* case, supra, to the extent of allowing evidence of prices paid by the condemnor for similar property in the vicinity, as done recently by the California Supreme Court in *County of Los Angeles v. Faus*, 48 Cal2d 672, 312 P2d 680 (1957). However, the distinction between voluntary sales and "sales" made to authorities about to initiate condemnation proceedings remains a very real one. And we adhere to the line of reasoning stated in the *Coos Bay Logging Co. case*, supra, and hold that the trial court committed no error in rejecting the proferred evidence.

The defendant's third and last assignment of error is, as previously noticed, directed to the court's denial of her motion of mistrial.

Mrs. Holmes took the stand as a witness on her behalf, and she testified that at noon of that day she had remained at home to give an opportunity for a further appraisal in behalf of the plaintiff. The appraisement was made by a Mr. Walstrom at that time apparently for the purpose of giving his testimony at the afternoon session of that day.

Mr. Schwabe, of plaintiff's counsel, at the conclusion of Mrs. Holmes' testimony offered to take the

---

[2] Oregon R. & N. Co. v. Eastlack, 54 Or 196, 203, 102 P 1011 (1909); Pacific Ry. & Nav. Co. v. Elmore Packing Co., 60 Or 534, 538, 120 P 389, Ann Cas 1914A, 371. See, also, Annotation 118 ALR 893 (1939).

512

stand "for the purpose of showing why Mr. Walstrom was unable to be here today." This he did and briefly stated that it was because the prospective witness was ill. Defendant's counsel concluded his short cross-examination with this statement:

"If he was able to inspect the property after the jury left there [i.e., during the noon recess] and get you an appraisal report today, I submit he wasn't very ill."

Whereupon, Mr. Schwabe retorted:

"Would you like to have his appraisal report, *which is less than Mr. Burnett testified to*"? (Emphasis added.)

The emphasized words were immediately made the basis for defendant's motion for mistrial. The motion was denied and the court instructed the jury to disregard Mr. Schwabe's remark on the relative amount of Walstrom's appraisement and struck the same from the record.

■ The granting or denying of a motion of mistrial is largely in the sound discretion of the trial judge. He is in a better position to understand the circumstances and the effect of the alleged impropriety upon the case. *Johnson v. Kolovos,* 224 Or 266, 275, 355 P2d 1115 (1960). And his holding will not be disturbed unless one can say affirmatively from the record that there has been an abuse of discretion. *Denton v. Arnstein,* 197 Or 28, 56, 250 P2d 407 (1952).

■ Mr. Schwabe's statement that Mr. Walstrom's appraisal was "less than Mr. Burnett['s]"² was certainly unfortunate and clearly inadmissible. But when examined in the context of his whole testimony (taking only two pages of the transcript, direct and cross-examination), it loses the importance and significance

which the defendant attempts to attach to it as being prejudicial to her case. The witness did not undertake to speak as an expert nor endeavor to substitute for Mr. Walstrom. Indeed, what he did say would not have been of any factual aid to the jury in arriving at its verdict. It was no more nor less than a spontaneous statement of an overanxious witness attempting to negate in the minds of the jurors any impression that plaintiff was concealing a higher appraisal, as the questions of defendant's counsel tended to insinuate was being done.

A reading of Mr. Schwabe's entire testimony convinces us that the jury was not misled thereby to defendant's prejudice. The trial judge evidently was of the same opinion and was satisfied that his cautionary instruction was sufficient under the circumstances to dissipate any prejudice that might have been engendered by Mr. Schwabe's inadvertent statement.

This conclusion is fortified by the jury's verdict which reflects that it took seriously the court's admonition to disregard Mr. Schwabe's unguarded remark. The record reveals that the only testimony concerning the value of defendant's premises came from three witnesses. The defendant placed the figure at $27,000. Mr. Bullier, called by her, gave $10,500 as a fair valuation; and Mr. Burnett, for plaintiff, testified to $9,250. The jury returned a verdict for $9,600, $350 in excess of Mr. Burnett's figure and $900 less than what Mr. Bullier represented it to be. It is, therefore, obvious that the jury gave no countenance to Mr. Schwabe's statement that Mr. Walstrom had arrived at a value "less than Mr. Burnett testified to."

We are satisfied that the court did not err in denying the motion.

Affirmed.