Argued January 6, reversed and remanded March 17, former
opinion modified October 13, 1965

# STATE HIGHWAY COMMISSION *v.*
# FISCH-OR, INC. ET AL

399 P. 2d 1011
406 P. 2d 539

*J. Robert Patterson,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Robert Y. Thornton, Attorney General, and L. I. Lindas, Assistant Attorney General and Chief Counsel for Oregon State Highway Commission, Salem.

*Manley B. Strayer,* Portland, argued the cause for respondent Fisch-Or, Inc. With him on the brief were Cleveland C. Cory and Richard A. Franzke, Portland.

No appearance for respondent The Prudential Insurance Company of America.

Before SLOAN, Presiding Justice, and O'CONNELL, GOODWIN and DENECKE, Justices.

GOODWIN, J.

This is a state highway condemnation case. The jury awarded the landowner substantially less than the landowner had sought. The trial court, believing that the jury had been incorrectly instructed, granted a new trial. The commission now appeals from the

order setting aside the verdict and granting a new trial.

The first question is whether or not, at the time it allowed the landowner's motion for a new trial, the trial court had jurisdiction of the motion. If the time during which the court lawfully could act had expired, then the order granting a new trial would be void and it would not be necessary to consider other issues tendered in this appeal.

The verdict was received on November 9, 1963. Judgment was not immediately entered because the amount of attorneys' fees had not yet been decided. On December 9, 1963, the landowner moved to set aside the judgment, even though it had not yet been reduced to a sum certain or signed by the judge, and moved for a new trial. On December 23, 1963, a form of judgment was presented to the court, and was thereupon signed in open court. The landowner then filed a second motion for a new trial. On December 23, therefore, the record consisted of a judgment order, signed by the judge but not yet entered in the clerk's journal, and a motion to set aside the judgment and grant a new trial. Four days later, on December 27, 1963, the county clerk entered the judgment in the journal.

ORS 17.615 provides that a motion for a new trial shall be "filed" within 10 days after the "filing" of the judgment, or such further time as the court may allow, and that the motion shall be heard and determined by the court within 55 days from the time of the "entry" of the judgment.

On February 20, 1964, the trial court signed the order setting aside the judgment and granting the new trial. February 20 was the fifty-fifth day after the judgment was entered in the journal, but it was

the fifty-ninth day after the judge signed the judgment. There is no record that the judgment was ever "filed," apart from the notation upon its face that it was "entered" on December 27, 1963.

The commission now says that the 55 days mentioned in ORS 17.615 began to run on the date the judgment was signed in open court. The commission says that the judgment was deemed "filed" the day it was signed. If the commission is right, then the order granting a new trial was signed four days after the trial court lost jurisdiction to make such an order. If the commission is wrong, then the order was timely.

There is some doubt whether in the relevant statutes the "filing" of a judgment is intended to mean the same as the "entry" of a judgment. In ORS 17.615 the context in which the words appear does not disclose whether a separate meaning is intended. In ORS 18.030 and 18.040, the clerk of the court is required to "enter" the judgment in the journal. It would appear from the context of ORS 18.030 et seq. that the word "enter" in such statutes has a technical meaning which describes the mechanical act of the clerk in making the judgment a part of the journal of the court. It would also appear that the legislature has, from time to time, used the word "enter" as synonymous with filing. See, e.g., ORS 3.070, which, referring to judgments, says, "They shall be filed and entered upon receipt thereof and shall become effective from the date of filing."

In the past, this court has held that the critical act, which gives life to the judgment as a judgment, and from which time is to be counted, is the delivery of the judgment to the clerk of the court with the intent that it be filed, or, as provided in ORS 18.030, entered. *Clark v. Auto Wholesale Co., Inc.,* 237 Or

446, 448, 391 P2d 754 (1964), and cases collected therein. In the case at bar, the record does not reveal when the judgment was delivered to the clerk for entry in the journal. It is possible, however, to learn from the judgment itself when it was "entered." There is no evidence to rebut the presumption that the clerk performed his statutory duty and entered the judgment the day it was delivered to his custody for that purpose. It is therefore to be presumed that the judgment was not delivered to the clerk until December 27, 1963. ORS 41.360(15). Accordingly, we hold: (1) that the time began to run on the day that the judgment was delivered to the clerk for entry in the journal; and (2) that whether or not the clerk actually entered the judgment on that day, in the absence of any evidence to the contrary it will be presumed as a matter of law that the date upon which the clerk took custody of the judgment was the date shown as the date of its entry in the journal. Accordingly, the trial judge signed the order within the 55 days permitted him to do. so.

The commission next contends that even if the order granting the new trial was allowed within the time permitted by ORS 17.615, the order was defective for another reason. The commission says the motion asking for the new trial was filed too soon. It will be recalled that the motion was filed on the day the trial judge signed the judgment, which was four days before the record shows the entry of the judgment in the journal. The record, as noted, does not show when the judgment was "filed," or delivered to the clerk. However, ORS 17.615 requires a motion of the kind before us to be filed within ten days after the "filing" of the judgment. The commission says that a motion for a new trial filed *before* the entry of the judgment

is void because there is no final judgment for the motion to challenge.

We will assume, for the purposes of ORS 17.615, that the legislature intended the time in which a motion for a new trial could be filed and the time in which the court must rule upon such a motion to be measured from the same date. Since we have held that the date of delivery to the clerk is the critical date for the 55-day period, and since the clerk must enter a judgment the day it is delivered to him, there would be no purpose in treating "filing" and "entry" as endowed with substantive differences for the purposes of this case.

■■ The more important question is whether a motion for a new trial filed *before* a judgment is entered in the journal can be a viable motion, or whether, as some courts have held, it is void because there is no final judgment from which the motion, like the mistletoe on the oak tree, can draw sustenance. See cases collected in 66 CJS 340, New Trial § 123. We see no useful reason for holding such a motion to be void. A motion for a new trial is simply a formal request for the court to perform a judicial act. If a party deems that some substantive right has been prejudiced by the filing of a motion for a new trial before the judgment has been entered by the clerk in the journal, such an irregularity can be called to the attention of the court and counsel, and suitable repairs can be made. If no objection is taken by the adversary, the irregularity presumably is harmless and should be deemed waived.

■ We construe ORS 17.615 as setting a ten-day limit after which a motion for a new trial cannot be filed without leave of the court. The statute does not

set a beginning date before which such a motion is void if filed. Those cases which hold that a motion for a new trial cannot be filed before the judgment is entered in the journal do not appear to further the purpose of such motions and appear, on the contrary, to make a jurisdictional fact out of a ministerial act of a clerk that is unrelated to the substantive rights of the parties. We hold that "within" as used in the statute under consideration means "not later than." For the same rule applied to an analogous statute, see *Dibble v. Hodes Co.*, 132 Or 596, 277 P 820, 286 P 554 (1930). The motion was not void. Since there was no objection, we hold that it was timely.

■ An order of a trial court granting a new trial will be sustained if it can be sustained upon any ground contained in the motion, but if there is no proper ground in the motion the order will be reversed. *Baden v. Sunset Fuel Co.*, 225 Or 116, 121, 357 P2d 410 (1960).

■ The motion for a new trial in the case at bar challenged the trial court's instruction that the jury could consider testimony about comparable sales as probative evidence of the value of the property taken, as well as evidence bearing upon the witness's qualifications to testify as a value expert. The landowner contends that this instruction was erroneous, and that the testimony of the expert concerning comparable sales should have been limited. The landowner had requested an instruction that the jury could consider the comparable sales only for their bearing upon the foundation laid by the witness to express his opinion of the value of the property taken.

In *Highway Com. v. Parker et al*, 225 Or 143, 164, 357 P2d 548 (1960), we held that a value witness may testify concerning comparable sales if the sales are

recent and voluntary, and that such testimony may be received both on direct and on cross examination.

In the *Parker* case, the issue was whether the testimony was admissible for any purpose. We were not called upon to decide whether the expert's testimony is admissible as substantive evidence of value. Accordingly, we held only that the testimony which the expert gave as to other sales is "admissible as a foundation of his opinion." 225 Or at 165.

The *Parker* case makes it clear, however, that the evidence of the prices at which other similar properties were sold should be admitted as subsantive evidence of value. Indeed, the price of neighboring land is cogent evidence of the fair cash market value of comparable property. 225 Or at 147. Also see *County of Los Angeles v. Faus,* 48 Cal2d 672, 312 P2d 680 (1957); 2 Wigmore, Evidence 503, § 463 (3d ed 1940); Note, 31 So Calif L Rev 204 (1958); Note, 49 Ky L J 132, 136 (1960).

It is sometimes observed that such evidence is hearsay. The expert witness ordinarily learns the facts by consulting records or other persons. It is the kind of hearsay, however, that is seldom challenged. The price of land sold is relatively easy to document, and the testimony is subject to contradiction if untrue. As a practical matter, both sides in cases of this kind ordinarily rely upon such testimony without ever raising the hearsay question. In the case at bar, evidence of a number of comparable sales came in as part of the landowner's direct examination of its witnesses. There was no effort by either party to challenge or limit such evidence. Later in the trial, when the commission presented its value evidence, the commission's witnesses testified about most of the same compara-

ble sales relied upon by the landowner's experts. The issue, with reference to the testimony, was whether the sales were, in fact, comparable. We hold that if the sales are recent, voluntary, and comparable the evidence is admissible as value evidence. It follows that an objection to it as irrelevant would not have been well taken. It was for the jury to decide what weight to give the testimony. There was no error, therefore, in instructing the jury that the evidence of comparable sales could be considered by the jury as evidence of value. Consequently, there was no basis for granting a new trial. The error occurred when the court set aside the verdict.

Voluntary sales are clearly distinguished from offers to buy or sell comparable property. Accordingly, we do not question the rule stated in *Highway Com. v. Morehouse Holding Co.*, 225 Or 62, 357 P2d 266 (1960), and *State of Oregon v. Cerruti et al.*, 188 Or 103, 115, 214 P2d 346, 351, 16 ALR2d 1105 (1950), that testimony about offers which did not ripen into sales is inadmissible. See *State Highway Com. v. Central Paving Co.*, decided March 17, 1965. Neither do we question the rule stated in *City of Portland v. Holmes*, 232 Or 505, 376 P2d 120 (1962), that prices paid under the threat of condemnation are irrelevant because they are not bargained for between a willing buyer and a willing seller.

We have considered other reasons assigned by the landowner in support of the trial court's exercise of discretion in granting a new trial, but none justified setting aside the verdict of the jury and ordering a new trial in this case.

Reversed and remanded with instructions to reinstate the verdict and the judgment entered thereon.

ON REHEARING

*J. Robert Patterson,* Assistant Attorney General, Salem, argued the cause for appellant on rehearing. With him on the brief were Robert Y. Thornton, Attorney General, and G. E. Rohde, Assistant Attorney General, Salem.

*Richard A. Franzke,* Portland, argued the cause for respondent Fisch-Or, Inc., on rehearing. With him on the brief were Manley B. Strayer and Cleveland C. Cory, Portland.

Before PERRY, Presiding Justice, and SLOAN, *O'CONNELL, GOODWIN, DENECKE, HOLMAN and LUSK, Justices.

HOLMAN, J.

The only question considered by the court on re-hearing is whether hearsay evidence of the sale price of comparable property, given in testimony by an expert, is admissible in a condemnation proceeding as independent substantive evidence of the value of the property being condemned. The jury was instructed that they could so consider it. The trial judge came to the conclusion that the instruction was erroneous and prejudicial and therefore granted a new trial. This is a matter of first impression in this state.

■ For many years there has been a split of authority in the United States on the question whether evidence of the sale of comparable property is admissible even when proved by primary evidence. See 5 Nichols, Eminent Domain, § 21.3 (Rev 3d ed 1962). Those courts following what is known as the Pennsylvania rule hold that it is not. Those following the Massachusetts rule hold that it is. While the authorities at one time may have been fairly evenly divided, this is not so today. The Massachusetts rule is now followed by most jurisdictions. Needless to say, those courts which still follow the Pennsylvania rule (they

* Did not participate in this decision.

are, according to Nichols, Arizona, Idaho, Kansas, Michigan, Minnesota, Oklahoma, and Pennsylvania; 5 Nichols, Eminent Domain, § 21.3[1], at 427-428, n. 2 [Rev 3d ed 1962]) would not accept hearsay evidence of comparable sales if they will not accept primary evidence of them. Oregon follows the Massachusetts rule. *State Highway Commission v. Parker,* 225 Or 143, 159, 357 P2d 548, 555 (1960), states as follows:

> "The general rule for the determination of the market value of property admits in evidence the price paid for similar property recently sold. Sutherland on Damages (4th ed) § 447 states:
>
> " 'Evidence of the price for which the property in question or other like property sold at a sale made under normal conditions is usually competent to show its value  *  *  *.'
>
> "We have accepted that rule.  *  *  *"

■ Of those courts believing the sale price of comparable property is relevant, some admit hearsay evidence by an expert of such prices for the purpose of showing the basis of, and to explain, the expert's opinion of the value of the property in question. Oregon also falls into this group. In *State Highway Commission v. Arnold,* 218 Or 43, 69, 341 P2d 1089, 1101, 343 P2d 1113 (1959), the court stated:

> "We think that an expert witness' opinion as to value should be received even though it is based in part upon statements or reports of others, as it was in the present case, if the jury is informed of the source and character of the information upon which the witness draws his inferences."

Of those jurisdictions accepting hearsay evidence of comparable sales to explain an expert's opinion some allow such testimony only if elicited on cross-

examination and some allow its use on either direct or cross-examination. Oregon falls within the group allowing its introduction by either method. In *State Highway Commission v. Parker,* supra, at page 160, Justice ROSSMAN, referring to three Oregon cases, stated as follows:

"* * * Three of them (*La Grande v. Rumelhart* [118 Or 166, 246 P 707 (1926)], *Portland v. Investment Co.* [64 Or 410, 129 P 756 (1913)], and *Dallas v. Boise* [44 Or 302, 75 P 208 (1904)]) constitute clear holdings that the price recently paid by a willing buyer to a willing seller for a similar property is admissible upon direct examination in cases of this kind. *Oregon R & N Co. v. Eastlack* [54 Or 196, 102 P 1011, 20 Ann Cas 692 (1909)] is a holding that such evidence is also admissible upon cross examination. We have no doubt as to the admissibility of such evidence."

Only one jurisdiction, the State of Montana, has allowed the use of hearsay evidence of comparable sale prices, when testified to by an expert, as substantive evidence of the value of the property being condemned. *State Highway Commission v. Greenfield,* — Mont —, 399 P2d 989, 991-992 (1964). The court stated its reasons for so ruling, at page 992, as follows:

"All expert opinion is based on 'hearsay' to a great extent and much of what is presented by such witnesses is 'secondary' evidence. We feel we can achieve speedy litigation and still preserve the truth by the rule adopted here. It must be shown that the witness is expert and that the sales are comparable and recent. With these safeguards plus the fact that the witness has his professional reputation riding on his testimony we feel that the repugnancy of this line of testimony is reduced, if not eliminated altogether. The development of a value pattern by one experienced in the business and knowledgable as to the area involved will best

bring uniformity to the market value determination in the most efficient manner. * * *"

The case is weakened because it relies upon cases cited to substantiate part of an annotation in 95 ALR2d 1217 (1964). The annotation states, at page 1224:

"The group of cases discussed in this section of the annotation support the rule that evidence of other comparable sales, even though founded on hearsay information, is admissible, both as independent substantive evidence of the market value of the real property in dispute, and as an explanation of the basis upon which the expert value witness arrived at his opinion of value. * * *"

Surprisingly, none of the cases cited justify that statement or are authority therefor. Some of them specifically refuse to pass upon the question posed by the annotation. For example, *State Highway Commission v. Parker,* supra, at page 165, states as follows:

"This opinion does not hold that the expert's testimony is admissible as substantive evidence. It goes no further than to hold that the testimony which he gave as to other sales is admissible merely as a foundation of his opinion."

The Supreme Court of Iowa has accepted another sort of hearsay—revenue stamps on deeds to comparable properties—as substantive evidence of value of the property being condemned. *Redfield v. Iowa State Highway Commission,* 251 Iowa 332, 99 NW2d 413 (1959). The court, at page 343, stated as follows:

"* * * The revenue stamps are as reliably indicative of the consideration as a recited amount would be. The stamps were attached to the deed pursuant to federal statute, the violation of which is a crime. With this reason for affixing the stamps we think the revenue stamps attached to the deed

may be said to indicate with reasonable certainty the consideration paid. * * *"

Some cases can be found where it appears that admitted evidence of the prices of comparable sales may have been hearsay, but the only question discussed was whether the sale price of comparable property was relevant and therefore admissible. There is no way to tell whether there was in fact primary evidence of the comparable sales, whether one or both parties were willing to admit the hearsay statement was accurate, or whether the hearsay objection was ever made. In any event, the hearsay aspect is not discussed in the appellate opinions.

Several courts have stated that hearsay testimony is not admissible as substantive evidence of value. Examples are as follows:

In *People v. Nahabedian,* 171 Cal App2d 302, 310, 340 P2d 1053, 1058 (1959), the court said:

"It must be remembered that the facts stated as reasons for the opinion of the witness do not become evidence in the sense that they have independent probative value upon the issue as to market value. On the contrary, they serve only to reinforce the judgment of the witness, that is, they go to the weight to be accorded his opinion * * *."

In *Stewart v. Commonwealth,* 337 SW2d 880 (Ky 1960), the court used the following language, at pages 884-885:

"* * * He proposed to support his opinion by discussing, inter alia, the prices paid for the Second Street properties just mentioned, but was not permitted to do so because his information was founded on hearsay. The question thus raised is of first impression in this jurisdiction.

"It was correctly pointed out in Commonwealth v. Begley, 1938, 272 Ky 289, 114 SW2d 127, that

evidence of comparable sales is admissible on two theories, (1) as independent substantive evidence of the value of the property to which the comparison relates, and (2) as foundation evidence supporting the opinion of the expert witness. If it were admissible only on the first of these theories there would certainly be no reason why the hearsay rule should not apply. * * *"

In *United States v. 5139.5 Acres of Land,* 200 F2d 659 (4th Cir 1952), the court held, at page 662, as follows:

"* * * And, although there is some conflict in the decisions, we think the better rule is that where the opinion of an expert witness is based in part on such sales, he should be permitted to give the details of the sales upon which he bases the opinion, although the facts so stated do not become independent evidence. * * *"

In *United States v. Katz,* 213 F2d 799 (1st Cir), cert. denied 348 US 857, 75 S Ct 82, 99 L Ed 675 (1954), the court considered the admissibility of hearsay evidence both to explain the expert's opinion and as substantive evidence of the value of the property in question. The court rejected the argument that, as a rule of law, such testimony was admissible under either theory. The court said, at page 800, as follows:

"* * * in the absence of recent voluntary sales of the condemned land itself, the best evidence of value available is the prices at which comparable lands in the vicinity of the land condemned change hands in voluntary transactions at about the time of the taking. This does not in any way imply that hearsay evidence is admissible to show the prices paid in voluntary transactions involving reasonably similar lands having the requisite propinquity in time and distance. And we are not aware of any persuasive reason of necessity,

or even of convenience, calling for a departure from the hearsay rule to admit such evidence. * * * most transactions are likely to be influenced by the motives of the parties thereto, such as the special needs or the strong desires of the buyer, the financial or other exigencies of the seller, and the whims, follies, fancies or ignorance of local values on the part of one or both of them. Since these are all matters of which persons with only hearsay knowledge of a sale can be expected to know little or nothing, whereas those with firsthand knowledge, such as a party to the sale itself or the broker or agent who affected it, can be expected to know at least something, we think the hearsay rule should be adhered to in the interest of justice to both parties. Nor does information as to prices gleaned from the recitations of consideration in deeds in the Registry, or revenue stamps affixed thereto, give any real help in arriving at value. More often than not the true consideration paid is not stated in a deed, there appearing only a formal statement of consideration. And the value of the revenue stamps affixed to a deed is determined by the consideration paid exclusive of the value of liens or encumbrances at the time of the sale, I.R.C. § 3482, 26 U.S.C.A. § 3482, so that accurate knowledge of the price paid cannot be calculated from revenue stamps without accurate knowledge of the value of liens and encumbrances on the land at the time of the sale which might or might not appear in the records of the Registry."

The court held that hearsay evidence might be admitted, at the discretion of the trial judge, only in the limited situation where such testimony is introduced to show the basis for an expert's opinion. See *Bailey v. U. S.*, 325 F2d 571 (1st Cir 1963), which explains the holding in the *Katz* case.

The only text that can be found that discusses the

specific point in issue is 5 Nichols, Eminent Domain, § 21.3[1], 431-432 (Rev 3d ed 1962):

> "The price paid for similar land, when admitted as independent evidence of value, must be proved with as much formality as any other material fact, and witnesses are not permitted to testify in regard to sales unless they were parties thereto, or were the brokers who effected the sale, or in some other manner knew the price paid of their own knowledge, and not as a matter of common rumor, or from hearsay only."

1 Orgel, Valuation Under Eminent Domain § 133, 575-576 (2d ed 1953), touches on the problem indirectly when discussing whether an expert may take into consideration hearsay while forming his opinion. He states as follows:

> "* * * There is some doubt whether a witness may consider sales data as to which he has no personal knowledge and *which would, if offered as independent evidence, be rejected as hearsay.*" (Emphasis ours)

All evidence is admissible unless there is a reason for excluding it. This is limited by the general rule that hearsay testimony is not admissible. The reason for the rule against hearsay, though variously expressed, is the belief that such testimony is not of sufficient veracity to be reliable because the speaker of the reproduced statement is not present in court and thus not under oath and subject to cross-examination.

There are many exceptions to the hearsay rule. While the exceptions cannot all be explained by rational analysis, most of them involve a feeling by the courts that there is something about the particular type of testimony which guarantees veracity to a

greater extent than that of ordinary hearsay. Wigmore's analysis has been criticized by other legal writers; however, he probably defines the reasons for most of the exceptions as well as any when he contends that to qualify as an exception to the hearsay rule the testimony in question (1) should be necessary, and (2) should have added or special guarantees of trustworthiness. 5 Wigmore, Evidence § 1420 (3d ed 1940).

The more modern tendency has been to define necessity as meaning convenience rather than absolute necessity. Morgan, Some Problems of Proof Under the Anglo-American System of Litigation 168 (1956). As an illustration, there is a necessity for making a dying declaration an exception to the hearsay rule because otherwise the testimony would be lost. This cannot be said of office records kept in the usual course of business because it is possible to have those who made the records testify, even though it might be highly inconvenient and time consuming. If the rule of necessity is applied to the present situation, it must be concluded that there was in fact no absolute necessity for admitting hearsay testimony of the sale price of comparable property. A buyer, seller, or broker could have been summoned into court for the purpose of giving first-hand information relative to the sale price. Such a practice may be inconvenient and time consuming to a degree. Whether it would be sufficiently inconvenient and time consuming to say that hearsay testimony was necessary is questionable.

What are the special guarantees of trustworthiness surrounding hearsay testimony of sales prices in condemnation cases? The reasons for added trustworthiness of this particular type of evidence have been advanced as follows: (1) if one who has personal knowl-

edge of the sale price should lie to the expert, the expert's skill and general knowledge of value allow him to detect and distrust such misrepresentation which appears to him to be at variance with the property's true value; (2) the expert's professional reputation rests upon the reliability of his opinion and this will cause him to inquire further if the reported sale price does not appear to be proper; (3) the price of land sold is relatively easy to document.

In addition to those reasons for bringing into court and subjecting to cross-examination a participant in the comparable sale enumerated in *United States v. Katz,* supra, we would like to suggest another. The situation is fraught with danger of actual misrepresentation when not guarded by cross-examination. The parties to the collateral transaction about which inquiry is made have no particular interest in the condemnation proceeding in question and therefore may resent inquiry by strangers about their personal and private transactions. This leads to misrepresentation. Also, there is a natural human tendency to want to appear to have made a "good deal" in the eyes of others; thus, a seller would be inclined to magnify the price at which he sold and the purchaser to minimize that at which he bought. Capital gains and losses arising out of sales of property as reflected in income tax liabilities and credits can also be a powerful factor leading to misrepresentation. Another factor inducing misrepresentation is that it may be advantageous to appear to have purchased cheaply because the amount of the property's assessment for ad valorem taxes is related to its market value. Reasons for misrepresentation of sales prices are inherent in many real property transactions.

Whether or not hearsay evidence should be admitted is perhaps partially dependent upon how stringently the qualifications of an expert appraiser may be defined by the court. It is customary in this jurisdiction to allow the trial judge a wide latitude of discretion in determining who is qualified as an expert. In most instances the standards required are not too high, and anyone is usually permitted to qualify who has any experience as a salesman of real property. The less stringent the qualifications of an expert, the less assurance that hearsay admitted through him would not suffer from lack of trustworthiness.

■ It is the opinion of the court that while there may be persuasive reasons why hearsay testimony of comparable sales should be admitted as independent substantive evidence, there are more persuasive ones why it should not. The strong possibilities that (1) reasons may exist for the participating parties to misrepresent and (2) the transaction may not be a free and open sale by a willing seller and purchaser with full knowledge lead us to refuse to give up the guarantee of trustworthiness afforded by cross-examination.

The dictum in *State Highway Commission v. Parker,* supra, at page 160, is an expression of the law with which we agree:

"* * * However, if an expert states the ground upon which his opinion is based, his explanation is not proof of the facts which he says he took into consideration: Wigmore on Evidence, 3rd ed., § 655. His explanation merely discloses the basis of his opinion in substantially the same manner as if he had answered a hypothetical question. It is an illustration of the kind of evidence which can serve multiple purposes and is admitted for a single, limited purpose only."

That portion of the original opinion of this court holding that hearsay evidence of the sale price of comparable property, testified to by an expert, may be considered as independent substantive evidence of the value of the property being condemned is hereby withdrawn. The judgment of the trial court granting a new trial to defendant is affirmed.

GOODWIN, J., dissenting.

While this court as a general rule allows the trial court wide discretion and will not reverse an order granting a new trial if there is any reasonable basis for sustaining it, *Foxton v. Woodmansee,* 236 Or 271, 283, 386 P2d 659, 388 P2d 275 (1964), I believe the majority in the present case takes a backward step in the law of evidence in order to avoid reversing an order granting a new trial.

The formal and mechanical employment of the hearsay rule to exclude convenient, relevant, and trustworthy evidence is subject to well-deserved criticism. See McCormick, Evidence 633-634, § 305 (1954). Now this court further sanctifies formality by holding that evidence which it is perfectly proper for the jury to hear in deciding what weight to give the expert's opinion cannot be considered by the jury as evidence of value. Few juries in condemnation cases will ever understand the difference, and in my opinion there is no practical reason why they should. See *State Highway Commission v. Greenfield,* — Mont —, 399 P2d 989 (1965).

It is true that in *Highway Com. v. Parker et al,* 225 Or 143, 357 P2d 548 (1960), we said, since hearsay was not in that case being offered as substantive evidence, that we were holding only that the expert

could testify concerning hearsay comparable sales as a foundation of his opinion. It is difficult, however, to read the opinion in the *Parker* case without discerning the reasoning underlying its salutary rule. The same reasoning equally should permit responsible experts to testify about comparable sales as evidence of value.

In the trial of routine condemnation cases neither party is seriously concerned about comparable sales as hearsay; the adversaries direct their attack against each other's experts as to the comparability of their respective sales. In the case at bar, opposing experts used some of the same sales, but drew different inferences from them. The trial judge adequately safeguards this kind of evidence by screening the experts. When there is a bona-fide question about the trustworthiness of the evidence, such evidence is easy enough to impeach.

It seems particularly unfortunate for this court to exert a retrograde force in this area of the law of evidence when the parties during the trial both thought the evidence was properly before the jury. It was only after receiving a disappointing verdict that a careful post-trial scrutiny of the record turned up for the first time the possibility that the hearsay might have been objected to as hearsay. It seems distressing to learn now that instead of leaving the door open in the *Parker* case the court was really closing it.

I would let the verdict stand.

SLOAN, J., joins in this dissent.