# STATE OF OREGON,
*Respondent,*

*v.*

# ALLEN WAYNE HOWARD,
*Appellant.*

## 0109-36588; A118703

134 P3d 1042

James N. Varner filed the brief for appellant.

Allen Wayne Howard filed the supplemental brief *pro se*.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Anna M. Joyce, Assistant Attorney General, filed the brief for respondent.

Before Landau, Presiding Judge, and Ortega, Judge, and Deits, Judge pro tempore.

LANDAU, P. J.

## LANDAU, P. J.

Defendant appeals a judgment of conviction for nine counts of robbery in the first degree with a firearm, ORS 164.415; nine counts of robbery in the second degree with a firearm, ORS 164.405; nine counts of unlawful use of a weapon with a firearm, ORS 166.220; and one count of felon in possession of a firearm, ORS 166.270. He assigns error to the trial court's denial of his motion for a new trial and, in a supplemental *pro se* brief, makes a variety of constitutional challenges to his sentences. We affirm.

The relevant facts are not in dispute. Defendant and an accomplice, Kuykendall, entered a bar, armed with a handgun and a flare gun, respectively. They ordered the patrons to hand over their keys and wallets. After collecting the patrons' possessions they left. Some of the patrons gave chase and managed to tackle Kuykendall.

Police arrested Kuykendall, who admitted to his involvement in the robbery. In the meantime, based on descriptions from the victims—including the fact that defendant was wearing jeans with distinctive tears—police located and detained defendant. In response to police questioning, defendant admitted that the robbery was "the first one" that either he or Kuykendall had done.

The case was tried to a jury. The state's case against defendant included testimony from a detective that defendant had confessed to committing the crime. The state also presented several other witnesses, including Kuykendall, who testified that defendant had committed the robbery with him and that defendant had in fact conceived the robbery plan; Kuykendall's mother, Lay, who testified that she had driven defendant and her son to defendant's home and watched as they armed themselves in preparation for the robbery; defendant's half-brother, who corroborated Lay's testimony; and several eyewitness who, with varying degrees of certainty, asserted that defendant had been one of the robbers. The state also produced corroborating physical evidence, including a case found at defendant's home, that had contained the flare gun used during the robbery, and a pair of

jeans with distinctive tears, worn by defendant during the robbery. The jury found defendant guilty on all counts.

Sentencing took place on March 19, 2002. The court sentenced defendant to 90 months' imprisonment for each of the first-degree robbery convictions and to 70 months' imprisonment for each of the second-degree robbery convictions. Each of those sentences represents a mandatory determinate sentence under Measure 11. *See* ORS 137.700. The court also sentenced defendant to presumptive sentences of 30 months' imprisonment on each of the unlawful use of a weapon convictions and 30 months on the felon-in-possession conviction. The court ordered the sentences on the first six counts of first-degree robbery to be served consecutively, ORS 137.123, with the remaining sentences to be served concurrently. The court also imposed a mandatory "gun minimum" sentence of 120 months' imprisonment to be served concurrently. *See* ORS 161.610 (establishing mandatory minimum sentences for crimes involving the use or threatened use of a firearm). In total, defendant was sentenced to 492 months, or 41 years, in prison.

On May 24, 2002, before the trial court had entered the judgment of conviction, defendant filed a motion for a new trial based on newly discovered evidence. In support of his motion, defendant offered the affidavit of Welker, who asserted that he had been a cell mate of defendant's accomplice, Kuykendall, shortly after the robbery, and that Kuykendall told him that defendant was not involved in the crime. At a hearing on June 13, 2002, the trial court denied that motion. Four days later, the judgment was filed.

On appeal, defendant first assigns error to the denial of his motion for a new trial based on newly discovered evidence. Defendant argues that the newly discovered evidence met all the requirements to justify a new trial, including the requirement that it would have likely changed the trial's result, and thus the court's denial of his motion was an abuse of discretion.

The state moved for summary affirmance on the ground that defendant's new trial motion was untimely. According to the state, the governing statute requires that new trial motions be filed within five days *after* the filing of

the judgment. Because in this case defendant filed his motion *before* the filing of the judgment, the state argued, under our decision in *State v. Futch*, 123 Or App 176, 191, 860 P2d 264 (1993), *aff'd on other grounds*, 324 Or 297, 924 P2d 832 (1996), the motion was untimely. This court denied the state's motion, however, noting that "*Futch* appears to be inconsistent" with Supreme Court case law construing parallel provisions of the civil new trial motion rule.

The state now renews its argument that defendant's new trial motion was untimely. The state acknowledges that there is case law construing the nearly identical provisions of the civil new trial motion rule that is at odds with our decision in *Futch*. The state insists, however, that, until we overrule *Futch*, it remains controlling. On the merits, the state contends that, in any event, the trial court was correct to deny defendant's motion because the requirements for a new trial based on newly discovered evidence were not met.

We disagree with the state's conclusion that defendant's new trial motion was premature, but, on the merits, we agree with the state that the trial court did not abuse its discretion in denying the motion.

■ We begin with the issue of the timing of defendant's motion for a new trial. At the time of defendant's trial, the timing of a new trial motion in a criminal trial was governed by ORS 136.535 (2001),[1] which provided, in part:

> "A motion in arrest of a judgment or a motion for a new trial, with the affidavits, if any, in support thereof *shall be filed within five days after the filing of the judgment sought to be set aside * * *.*"

(Emphasis added.) The state argues that, under the plain language of the statute, a motion for a new trial must be filed *after* the filing of the judgment. In this case, the state argues, defendant filed his motion *before* the judgment was filed.

---

[1] ORS 136.535 was substantially amended in 2003. Or Laws 2003, ch 288, § 1. Under the current law, which took effect January 1, 2004, the timing for a motion for a new trial in a criminal action is governed by the same rule governing the timing of such a motion in a civil action, ORCP 64. All subsequent references to ORS 136.535 are to the version of the statute in effect prior to the 2003 amendments.

Hence, the state concludes, under the statute, defendant's motion was not properly before the court.

Because this is an issue of statutory construction, we begin by examining the text of the statute in context and, if necessary, legislative history and other aids to construction. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993).

Examination of the text of the statute makes it clear that the state's proposed construction is plausible. The statute does refer to filing within five days "after" the filing of the judgment. But that is not the only permissible reading of the bare words of the disputed provision. It is equally plausible that the proper emphasis is not on the word "after" but, rather, on the word "within." In that sense, the sentence reasonably may be understood to place an outer limit of filing, that is, "no later than" five days after the filing of the judgment. *See Webster's Third New Int'l Dictionary* 2627 (unabridged ed 2002) (defining "within" as, among other things, "not longer in time than").

The bare words of the statute, however, do not define the limits of our textual analysis. We must also examine those words in context. *See, e.g.*, *Vsetecka v. Safeway Stores, Inc.*, 337 Or 502, 508, 98 P3d 1116 (2004) ("Viewed in isolation, that text provides support for employer's position. Ordinarily, however, text should not be read in isolation but must be considered in context.").

Part of the relevant context consists of prior decisions of this court. *Waite v. Dempsey*, 203 Or App 136, 141, 125 P3d 788 (2005); *Liberty v. State Dept. of Transportation*, 200 Or App 607, 613, 116 P3d 902 (2005). In that regard, we note that, in *Futch*, we appear to have at least assumed the correctness of the interpretation of ORS 136.535 that the state advances in this case. In that criminal case, the defendant filed a motion for a new trial before the judgment had been entered by the trial court. The state did not object, and the trial court denied the motion on the merits. On appeal, the defendant assigned error to the denial of the motion. The defendant conceded that his motion probably was untimely, but he argued that any objections to the timing of his motion had been waived. We rejected the defendant's argument,

explaining: "A trial judge's ruling may be correct for the wrong reason. On appeal, it is incumbent on [the] defendant to demonstrate that the trial court erred. The trial court did not err if [the] defendant's motion was not properly before it." 123 Or App at 191.

Thus, in *Futch*, we did not analyze ORS 136.535. Nor did we explicitly hold that it requires new trial motions in criminal cases to be filed *after* the judgment has been filed; we merely noted that the defendant had conceded the point. In accepting the concession, however, the opinion does appear to assume its correctness. And the state cannot be faulted for relying on that as suggesting that new trial motions in criminal cases may not be filed before the judgment has been filed.

The problem arises—as this court pointed out in denying the state's motion for summary affirmance—when the statute is examined in light of the broader context of cases construing the nearly identical new trial motion rule for civil cases. *See State v. Carr*, 319 Or 408, 411-12, 877 P2d 1192 (1994) ("[c]ontext includes other related statutes"). *Former* ORS 17.615 (1963), *repealed by* Or Laws 1979, ch 284, § 199, was enacted as the civil parallel to ORS 136.535. It provided, in part:

> "A motion to set aside a judgment and for a new trial, with the affidavits, if any, in support thereof, *shall be filed within 10 days after the filing of the judgment sought to be set aside* * * *."

(Emphasis added.) The statute thus provided a time limit of 10 days instead of five, but otherwise is identical in wording to ORS 136.535.

In *Highway Commission v. Fisch-Or*, 241 Or 412, 399 P2d 1011 (1965), the Supreme Court addressed whether *former* ORS 17.615 required that motions for a new trial be filed after the filing of the judgment, and not before. The court categorically held that the statute *did not* require such motions to be filed after the filing of the judgment:

> "The more important question is whether a motion for a new trial filed before a judgment is entered in the journal can be a viable motion, or whether, as some courts have

held, it is void because there is no final judgment from which the motion, like the mistletoe on the oak tree, can draw sustenance. We see no useful reason for holding such a motion to be void. A motion for a new trial is simply a formal request for the court to perform a judicial act. If a party deems that some substantive right has been prejudiced by the filing of a motion for a new trial before the judgment has been entered by the clerk in the journal, such an irregularity can be called to the attention of the court and counsel, and suitable repairs can be made. If no objection is taken by the adversary, the irregularity presumably is harmless and should be deemed waived.

"We construe ORS 17.615 as setting a ten-day limit after which a motion for a new trial cannot be filed without leave of the court. *The statute does not set a beginning date before which such a motion is void if filed.*"

*Id.* at 417 (citations omitted; emphasis added).

ORS 17.615 was later repealed, following the adoption of the Oregon Rules of Civil Procedure. The rule from *Highway Commission*, however, remains good law. The timeliness of a motion for a new trial in the civil context is now governed by ORCP 64 F, which provides:

"A motion to set aside a judgment and for a new trial, with the affidavits or declarations, if any, in support thereof, *shall be filed not later than 10 days after the entry of the judgment sought to be set aside.*"

(Emphasis added.) In *Way v. Prosch*, 163 Or App 437, 442, 988 P2d 422 (1999), we held that the change in language from "within 10 days," in *former* ORS 17.615, to "not later than 10 days," in ORCP 64 F, does not change the fundamental point that the Supreme Court had reached in *Highway Commission* that a premature filing of the motion for a new trial does not *ipso facto* render it void.

This court's treatment of ORS 136.535 in *Futch* is, indisputably, difficult to reconcile with the Supreme Court's interpretation of *former* ORS 17.615 in *Highway Commission*. In resolving the tension between those two cases, we note that *Futch* did not explicitly analyze or construe the text of ORS 136.535 (nor did the defendant's brief in *Futch* even raise the argument that ORS 136.535 ought to be

controlled by the Supreme Court's reasoning in *Highway Commission*). We accepted the defendant's concession that his motion had not complied with the statute and concluded that the motion was void.

■ Conversely, the Supreme Court in *Highway Commission* confronted the statutory question directly and explicitly interpreted the nearly identical language of *former* ORS 17.615 in precisely the opposite fashion. Such interpretations become part of the very text of the statutes. *Stephens v. Bohlman*, 314 Or 344, 350 n 6, 838 P2d 600 (1992) ("When this court interprets a statute, that interpretation becomes a part of the statute as if written into it at the time of its enactment."). Given that fact, and given that the language that the court in *Highway Commission* construed is essentially the same as the language in ORS 136.535 (2001) that is at issue in this case, we conclude that the Supreme Court's analysis of the meaning of *former* ORS 17.615 controls our interpretation of ORS 136.535 (2001). *See Tharp v. PSRB*, 338 Or 413, 422, 110 P3d 103 (2005) (the identical phrase in related statutory provisions is interpreted as having the same meaning in both provisions). In consequence, we conclude that ORS 136.535 does not require motions for new trials in criminal cases to be filed after the filing of the judgment. To the extent that *Futch* is inconsistent with that understanding, *Futch* is no longer correct.

Returning to the particulars of this case, defendant filed his motion before the filing of the judgment. The state did not object, and the trial court ruled on the motion on the merits before filing the judgment. The motion was timely.

■ We turn to the merits. To justify a new trial, newly discovered evidence must meet each of six requirements. It must:

> " '(1) be such as will probably change the result if a new trial is granted; (2) have been discovered since the trial; (3) be such as could not have been discovered before the trial by the exercise of due diligence; (4) be material to the issue; (5) not be merely cumulative of former evidence; and (6) not be merely impeaching or contradictory of former evidence.' "

*State v. Sullens*, 120 Or App 15, 17-18, 852 P2d 270 (1993) (quoting *State v. Disorbo*, 54 Or App 877, 882, 636 P2d 986 (1981)).

■    In this case, the evidence that defendant offered in support of his motion for a new trial did not meet at least one of those requirements. Specifically, defendant has made no showing that the evidence in the affidavit was discovered since the trial or, if it was, that it could not have been discovered earlier with due diligence. Defendant maintains only that the statement of Welker was not actually obtained until several months after the verdict. Although the affidavit is dated after the verdict, Welker's statement itself refers to a conversation that allegedly occurred in September 2001, soon after the robbery and well before the verdict in this case. Defendant has the burden of showing that new evidence could not have been discovered through the exercise of due diligence. *State v. Walker*, 244 Or 404, 413, 417 P2d 1004 (1966). Here, he did nothing to meet that burden. The trial court did not err in denying defendant's motion for a new trial.

Defendant also filed a supplemental *pro se* brief in which he advances several unpreserved assignments of error regarding the constitutionality of his sentences. Among the claims advanced by defendant are that his sentence was cruel and unusual under the Eighth Amendment to the United States Constitution, that he was denied equal protection and due process, and that, under the Oregon Constitution, the jury, not the trial court, should have determined whether he was entitled to a new trial. He also argues that under *Blakely v. Washington*, 542 US 296, 124 S Ct 2531, 159 L Ed 2d 403 (2004), and *Apprendi v. New Jersey*, 530 US 466, 120 S Ct 2348, 147 L Ed 2d 435 (2000), the court erred in imposing sentences based on facts that defendant did not admit and that the court did not submit to a jury. We reject without discussion the bulk of defendant's assertions, but write to briefly address two issues involving the scope of *Blakely* and *Apprendi*.

First, defendant contends that, under *Blakely* and *Apprendi*, the court erred in imposing consecutive sentences based on facts that defendant did not admit and that the court did not submit to a jury. Defendant did not preserve this argument, and thus it is reviewable only if it is error apparent on the face of the record. ORAP 5.45(1). It is not. *State v. Fuerte-Coria*, 196 Or App 170, 100 P3d 773 (2004), *rev den*, 338 Or 16 (2005).

■     Second, defendant argues that, under *Blakely,* the court erred in sentencing him to a 10-year "gun minimum" sentence based on facts that defendant did not admit and that the court did not submit to a jury. In this case, as we have noted, the court sentenced defendant to a ten-year gun minimum sentence based on two findings, that is, that he used a gun in the commission of this crime and that he had a prior conviction for a gun minimum. The first fact was expressly found by the jury, so it offers no basis for defendant's argument. As for the second, this court has not had occasion to say whether a sentence based on a judicial finding that a defendant had a prior gun minimum conviction runs afoul of *Blakely* and *Apprendi* or whether, instead, such a finding fits within the exception outlined in those cases for "the fact of a prior conviction." We need not decide that question here, where defendant raises the argument for the first time on appeal. Imposition of a sentence based on such a finding is certainly not plain error. *See State v. Yashin*, 199 Or App 511, 519, 112 P3d 331 (2005) ("We cannot say beyond dispute that 'the fact of a prior conviction' excludes subsidiary fact-finding necessary to the determination that a conviction is, as a legal matter, usable for the purpose of increasing a sentence.").

Affirmed.